AMBASSADOR, INC. ET AL. *v.* UNITED STATES ET AL.

No. 446.   Argued March 9, 12, 1945.—Decided May 21, 1945.

*Mr. Parker McCollester,* with whom *Messrs. George deForest Lord* and *Joseph W. Wyatt* were on the brief, for appellants.

*Solicitor General Fahy,* with whom *Messrs. Chester T. Lane, Charles R. Denny, Harry M. Plotkin* and *Joseph M. Kittner* were on the brief, for the United States; and *Mr. T. Brooke Price,* with whom *Messrs. Spencer Gordon, John T. Quisenberry, John H. Ray* and *R. A. Van Orsdel* were on the brief, for the American Telephone & Tele-

graph Co. and the Chesapeake & Potomac Telephone Co., appellees.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This action was instituted at request of the Federal Communications Commission in the District Court of the United States for the District of Columbia. The Chesapeake & Potomac Telephone Co., which is engaged in rendering telephone service in the District of Columbia, and the American Telephone & Telegraph Co. were made defendants, as also were the appellants, comprising the proprietors of twenty-seven hotels in the District of Columbia. The complaint asks and the court below has granted an injunction which forbids the hotels to make charges against their guests in connection with any interstate or foreign message toll service to or from their premises, other than the toll charges of the telephone companies and applicable federal taxes. The prohibition is based on a provision to that effect in the tariff filed by the telephone companies. Upon the trial, evidence was limited by stipulation to the facts about the Shoreham Hotel, accepted as typical of all defendants.

Telephone service is available to patrons of the hotel without a charge by the hotel. In or near the lobbies, telephone booths have direct connection with telephone company central offices. Calls can there be made without involving the services of the hotel personnel and at the usual tariff rates of the telephone company paid through its coin boxes.

However, modern hotel standards require that telephone service also be made available in the rooms. Equipment for this purpose is specified by the hotel but is installed and owned by the telephone company. The hotel pays a monthly charge for its use, and its operation is at the hotel's expense. The operating cost is substantial, rentals of the Shoreham in 1943 being $8,680.10 and payrolls for operation amounting to $21,895.62.

Typical equipment consists of a private branch exchange, known as a PBX board, connected with a number of outside or trunk lines and also with extension lines to each serviced room, and other items. This equipment permits calls for various kinds of room service, communication between guests, and calls from station to station within the hotel for which no use of other lines of the telephone company is necessary. The same switchboard and its hotel-employed operators also handle both incoming and outgoing calls for guests, including many long distance messages.

So far as the telephone company is concerned, the toll message coming to its central office from the hotel switchboard is handled much as a similar message from a residence or business station. Within the hotel, however, room telephone service necessitates additional labor as well as use of the equipment. When a call is made from the station in a room, it is placed with the switchboard operator employed by the hotel, and she in turn places the call with the telephone company's long distance operator. It is customary also to render services described as secretarial. Incoming messages may be received during the guest's absence and memoranda of them are made for and delivered to him. Outgoing messages may be transmitted for the guest. Information as to his whereabouts may be left with the operator for communication to callers; he may arrange to be reached at other locations than his room; he may arrange to have telephone service suspended for a period; incoming calls may be limited to those from designated persons, and various other services helpful to comfortable living are supplied by those in charge of the interior telephone system.

Each long distance call placed through the hotel's switchboard is charged by the telephone company to the hotel, not to the guest. The hotel pays the charge and is reimbursed, less credit losses, by collections from the guest.

320

The reimbursement item is separately stated on the guest's bill and is not itself involved in this controversy.

The hotel also seeks to recoup the cost of its service, including equipment rentals, and perhaps some margin of profit, by a service charge to the guests who make long distance calls from their rooms. This charge varies in different hotels but this typical case shows charges of ten cents for toll calls where the telephone tariff is one dollar or less, ten percent of the telephone tariff where the charge is more than one dollar, with a maximum of three dollars per call. This service charge appears on the guest's bill as a separate item, but is stated, like the reimbursement charge, as "Long distance," abbreviated to "LDIST".

In January 1942, a proceeding was instituted by the Federal Communications Commission for the purpose of determining whether the charges collected by hotels, apartment houses and clubs in the District of Columbia in connection with interstate and foreign telephone communication were subject to the jurisdiction of the Commission under the Communications Act and what tariffs, if any, should be filed with the Commission showing such charges. No such tariffs were on file with the Commission at the time the proceeding was instituted.

The Commission, December 10, 1943, found that it does have jurisdiction under the Communications Act over the charges collected by hotels and others and ruled that, if such charges are to be collected at all, they must be shown on tariffs on file with the Commission. It thought that the hotel should be regarded as the agent of the telephone companies. It issued an order directing the two telephone companies either to file appropriate tariffs showing charges collected by the hotels in connection with interstate and foreign telephone communications or to file an appropriate tariff regulation containing a specific provision with respect to conditions under which such interstate and foreign service would be furnished to hotels, apartment houses and clubs.

Confronted with these alternatives, The Chesapeake & Potomac Telephone Company filed a tariff provision in which the American Telephone & Telegraph Company concurred, which reads as follows:

"Message toll telephone service is furnished to hotels, apartment houses and clubs upon the condition that use of the service by guests, tenants, members, or others shall not be made subject to any charge by any hotel, apartment house or club in addition to the message toll charges of the Telephone Company as set forth in this tariff."

This tariff provision became effective by its terms February 15, 1944. Four days later, this suit was instituted to enjoin the hotels from collecting charges made in violation of the tariff provision, and to enjoin the telephone companies from furnishing such service to these hotels or others which continued to make charges.

The District Court sustained the validity of the tariff.[1] It regarded the hotels as subscribers rather than as agents of the telephone companies. It held that the tariff was violated by collection of surcharges from guests who make interstate or foreign long distance telephone calls or receive such calls "collect." The court did not pass upon the justness or reasonableness of the tariff, being of opinion that such questions were in the first instance to be submitted to and determined by the Commission in appropriate proceedings. An injunction issued against the hotels but not against the telephone companies, the court, however, retaining jurisdiction over the proceedings as to all defendants for the purpose of issuing such further orders as might be necessary to effectuate its decision. Direct appeal was taken by the hotel defendants to this Court.[2]

---

[1] The opinion was rendered orally and is not reported.

[2] Pursuant to § 2 of Expediting Act, 32 Stat. 823; 36 Stat. 1167; 15 U. S. C. § 29; 49 U. S. C. § 45; and Communications Act of 1934, 48 Stat. 1093, 47 U. S. C. § 401 (d). Also § 238 (1) of Judicial Code as amended, 43 Stat. 938, 28 U. S. C. § 345 (1).

It has long been recognized that if communications charges are to correspond even roughly to the cost of rendering the service, the use to which telephone installations may be put by subscribers must be subject to some kind of classification and regulation which will conform the actual service to that contracted for. Familiar examples are the classification of residence as against business service with a requirement that the subscriber confine his use of the instruments accordingly. Of course, the subscriber who installs a private branch exchange with multiple trunk lines and many extensions has obviously contracted for a class of service different from one whose installation consists of a single station. One of the problems incident to the service of a subscriber who takes facilities greatly in excess of his own needs in order to accommodate others is to fix upon what terms he may extend the use of telephone facilities to others. This is an aspect of the problem of resale of utility service which is not confined to the telephone business.[3]

---

[3] Cf. *Re New York Telephone Co.*, 26 P. U. R. (N. S.) 311 (N. Y. 1938), 30 P. U. R. (N. S.) 350 (N. Y. 1939); *People ex rel. Public Service Commission* v. *New York Telephone Co.*, 262 App. Div. 440, 29 N. Y. S. 2d 513 (1941), aff'd without opinion, 287 N. Y. 803, 40 N. E. 2d 1020; *Hotel Pfister* v. *Wisconsin Telephone Co.*, 203 Wis. 20, 233 N. W. 617 (1930); *Jefferson Hotel Co.* v. *Southwestern Bell Telephone Co.*, 15 P. U. R. (N. S.) 265 (Mo. 1936); *Re Hotel Marion Co.*, P. U. R. 1920 D, 466 (Ark. 1920); *Connolly* v. *Burleson*, P. U. R. 1920 C, 243 (N. Y. 1920); *Re Hotel Telephone Service and Rates*, P. U. R. 1919 A, 190 (Mass. 1918); *Hotel Sherman Co.* v. *Chicago Telephone Co.*, P. U. R. 1915 F, 776 (Ill. 1915); *1015 Chestnut Street Corp.* v. *Bell Telephone Co.*, P. U. R. 1931 A, 19, 7 P. U. R. (N. S.) 184 (1930, 1934); *Budd* v. *Southwestern Bell Telephone Co.*, 28 P. U. R. (N. S.) 235 (Mo. 1939).

Remetering of electric energy creates similar problems of regulation, often dealt with by tariff prohibition of remetering. See *Lewis* v. *Potomac Electric Power Co.*, 64 F. 2d 701 (App. D. C. 1933); *Karrick* v. *Potomac Electric Power Co.*, P. U. R. 1932 C, 40 (D. C. Sup. Ct. 1931); *Florida Power & Light Co.* v. *Florida ex rel. Malcolm*, 107 Fla.

The Communications Act of 1934 recognizes that tariffs filed by communications companies may contain regulations binding on subscribers as to the permissible use of the rented communications facilities. The supervisory power of the Commission is not limited to rates and to services, but the formula oft repeated in the Act to describe the Commission's range of power over the regulated companies is "charges, practices, classifications, and regulations for and in connection with such communication service." 48 Stat. 1070, 47 U. S. C. § 201 (b). It is in all of these matters that the Act requires the filed tariffs to be "just and reasonable" and declares that otherwise they are unlawful.[4] By none of these devices may the companies perpetrate an unjust or unreasonable discrimination or preference.[5] All of these must be filed with the Commission in the form it prescribes, may not be changed except after due notice, and must be observed in the conduct of its business by the company.[6] These provisions clearly authorize the companies to promulgate rules binding on PBX subscribers as to the terms upon which the use of the facilities may be extended to others not themselves subscribers.

Of course, such authority is not unlimited. The telephone companies may not, in the guise of regulating the communications service, also regulate the hotel or apartment house or any other business. But where a part of

317, 144 So. 657 (1932); *Sixty-seven South Munn* v. *Board of Public Utility Commissioners*, 106 N. J. Law 45, 147 A. 735 (Sup. Ct. 1929), aff'd 107 N. J. Law 386, 152 A. 920 (Court of Errors and Appeals 1930), cert. denied, 283 U. S. 828; *Public Service Commission* v. *J. & J. Rogers Co.*, 184 App. Div. 705, 172 N. Y. S. 498 (N. Y. 1918); *People ex rel. N. Y. Edison Co.* v. *Public Service Commission*, 191 App. Div. 237, 181 N. Y. S. 259 (N. Y. 1920), aff'd, 230 N. Y. 574, 130 N. E. 899 (1920).

[4] 47 U. S. C. § 201.

[5] 47 U. S. C. § 202.

[6] 47 U. S. C. § 203 (a), (b), (c).

the subscriber's business consists of retailing to patrons a service dependent on its own contract for utility service, the regulation will necessarily affect, to that extent, its third party relationships. Such a regulation is not invalid *per se* merely because, as to the communications service and its incidents, it places limitation upon the subscriber as to the terms upon which he may invite others to communicate through such facilities.

It is urged, however, that the regulation in question is unlawful because it is unreasonable. It is said that it invades the relationship between hotel and guest excessively, and denies to the hotel the right reasonably to recoup its cost and to profit by the services it renders. But we agree with the District Court that where the claim of unlawfulness of a regulation is grounded in lack of reasonableness, the objection must be addressed to the Commission and not as an original matter brought to the court. We think that the Act confers jurisdiction upon the Commission to hear appellants' grievances against the substance of this regulation. Indeed, appellants inform us that the American Hotel Association, on behalf of its members, including the appealing hotels, has filed a formal complaint with the Commission alleging that the new provision of the tariff schedule was unreasonable, discriminatory and unlawful, and asking for investigation and, at the same time, asserting that the tariff was illegal. Action on that complaint has been held in abeyance by the Commission pending the final decision on the jurisdictional question in this suit.

It is clear that the charges being made in this case violate the regulation. The charges made are not based on the service rendered by the hotel but vary in accordance with the toll charge made by the telephone company for communications services. So far as appears, the service rendered by the hotel in handling a guest's toll call from Washington to Baltimore is substantially the same as for

a call to San Francisco. But, for like service, the charge varies with the amount of the telephone tariff for the communication. The guest's charges are so identified with the communications service that they are brought within the prohibitions of this regulation.

Since the regulation, apart from questions of reasonableness which must be presented to the Commission, is a valid regulation of the subscriber's use of the telephone facilities involved, a departure from the regulation is forbidden by the Act and the prosecution of an action to restrain a violation is authorized.[7] When an action for enforcement is instituted in any District Court, the Act expressly provides that it shall be lawful "to include as parties, in addition to the carrier, all persons interested in or affected by the charge, regulation, or practice under consideration," and decrees may be made against such parties in the same manner and to the same extent as authorized with respect to carriers.[8] One can hardly gainsay the Government's assertion that the appellants here are persons interested in and affected by the regulation in question and, therefore, are proper parties defendant in the action and injunction could properly issue against them.

It is urged, however, that inasmuch as the Court did not enjoin the telephone companies, the hotels should not be enjoined. Four days after the effective date of this regulation, the hotels had indicated no intention to comply with it although they had had due notice. It was well within the discretion of the trial court to conclude that this justified an injunction. Four days of default by the subscriber, however, might not be regarded as requiring an injunction which would compel the telephone companies to cut off service on which many persons rely. We are unable to see that the hotels have been prejudiced by

[7] 47 U. S. C. § 401.
[8] 47 U. S. C. § 411.

the failure to enjoin the telephone companies or are in a position to complain of the omission of what would have been an additional hardship to themselves.

Much has been said in argument about the theory of the relationship between the hotel and the telephone company and the discrepancy between the view of the Commission that the contract created an agency and that of the District Judge who said that the evidence fails to show that the hotels are agents of the telephone company, and held that "the hotels are subscribers." We do not think it is necessary in determining the application of a regulatory statute to attempt to fit the regulated relationship into some common-law category. It is sufficient to say that the relation is one which the statute contemplates shall be governed by reasonable regulations initiated by the telephone company but subject to the approval and review of the Federal Communications Commission.

Without prejudice to determination by the Commission of any of the questions raised in this case, we hold that the injunction was properly issued and the judgment below is

*Affirmed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.