The Bell Telephone Company of Pennsylvania, Appellant, *v.* Philadelphia Warwick Company.

Argued April 24, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John B. H. Carter*, with him *Benjamin O. Frick* and *John B. King*, for appellant.

*James H. Booser*, with him *Bernard Eskin*, *McNees, Wallace & Nurick*, *Jefferson C. Barnhart*, *Harry H. Frank* and *Wolf, Block, Schorr & Solis-Cohen*, for appellee.

*William S. Livengood, Livengood & Nissley*, *Samuel D. Goodis, Folz, Bard, Kamsler, Goodis & Greenfield*, *Clyde A. Armstrong*, *Kenneth G. Jackson* and *Thorp, Reed & Armstrong* filed a brief for Pennsylvania Hotels Association et al., amici curiae.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 25, 1953:

On a former appeal of this case by defendant, following plaintiff's filing of its statement of claim, we held (355 Pa. 637, 50 A.2d 684) that the court of common pleas had jurisdiction of the cause of action. Thereupon defendant filed its answer, including new matter and a counterclaim. After an unsuccessful attempt to obtain judgment on the pleadings, plaintiff filed a reply. Trial was had before the court below sitting without a jury. The facts are neither complicated nor in dispute and they may be stated as follows:

Under a written agreement dated June 19, 1942, between the plaintiff, The Bell Telephone Company of Pennsylvania, and the defendant, Philadelphia Warwick Company, the former installed on the latter's hotel premises a semi-public branch exchange system and con-

necting facilities for guests; for the use and maintenance of the equipment defendant was to pay a monthly charge. Acting as plaintiff's agent, defendant was to collect the established telephone rates for all local and toll messages sent from the hotel premises, and to receive as compensation from plaintiff a commission of 60% of the gross receipts from local messages and 20% from toll messages, not to exceed 25 cents on any one message. Plaintiff had on file with the Public Utility Commission tariffs specifying its rates and regulations for intrastate service and with the Federal Communications Commission tariffs specifying its rates and regulations for interstate and foreign service, and the contract provided that the facilities and service furnished by plaintiff were subject to its established regulations and schedules of rates. The contract was to continue in force from month to month until terminated by ten days' notice in writing from either party to the other.

Defendant, in conformity with what was apparently a prevailing practice among hotels, made and collected surcharges from its guests for telephone service on all toll messages whether intrastate, interstate or foreign; it billed such charges without distinguishing them from plaintiff's lawful tariff rates, but instead included them in a lump-sum charge constituting the total charge for the call. Since such additional charges were not provided for in the tariffs filed by plaintiff, the Pennsylvania Public Utility Commission, on July 21, 1942, notified it that the charges thus made by any hotel on calls placed by guests over semi-public branch exchanges constituted a violation of the tariffs and agency agreements of the telephone company, and plaintiff was directed therefore to institute the necessary measures to effect the discontinuance of the practice. Plaintiff advised the Commission that it would

so notify the hotels having agency contracts with it, and would, as the ultimate means of enforcing the Commission's order, serve upon any hotel acting in disregard of the provisions of the tariffs in respect to an intrastate call a ten-day notice of disconnection of telephone service; plaintiff suggested, however, that, as the same question was then being considered by the Federal Communications Commission, it might be desirable to await the outcome of those proceedings before resorting to a disconnection of the service. The proceedings thus referred to resulted in a decision by the Federal Communications Commission, on December 10, 1943, that such surcharges by hotels were charges for and in connection with telephone communication service, and therefore, if they were to be collected at all, they must be properly shown in tariffs filed by the telephone companies. The Commission also held that it was the responsibility of the telephone companies to protect the users against any improper charges, a responsibility that could not be avoided on the ground that the surcharges were fixed, collected and retained by the hotels: 52 P. U. R. (n.s.) 141. The telephone companies there involved having each filed a tariff provision that message toll service furnished to hotels should not be made subject to any charge by the hotel in addition to the charges of the company as set forth in its tariff, and suit having been instituted to enforce the order of the Commission, the Supreme Court of the United States, in *Ambassador, Inc. v. United States*, 325 U.S. 317, affirmed, on May 21, 1945, a judgment of the District Court of the United States for the District of Columbia enjoining the hotels which were parties in the suit from making any charges against their guests in connection with any interstate or foreign message toll service to or from their premises,

other than the toll charges of the telephone company and applicable federal taxes.*

Meanwhile, on February 12, 1944, following the rulings which had thus been made by both the Pennsylvania Public Utility Commission and the Federal Communications Commission, plaintiff gave defendant written notice that it was filing a tariff regulation with the Federal Communications Commission providing that hotels should make no charges in connection with interstate and foreign toll messages in addition to the charges of the telephone company, that plaintiff's tariffs filed with the Pennsylvania Public Utility Commission covering intrastate toll calls provided for the collection of the company's established toll charges only, and, accordingly, that no surcharge could be made on *any* toll call. The notice proceeded to state that defendant's contract with the company, under which semi-public branch exchange service was being furnished, would be terminated immediately before midnight, February 23, 1944, and that a new agreement was being prepared and would be promptly submitted to defendant providing for an allowance of 15% commission on all toll messages, the commissions on local messages to remain the same as before.

When the proposed new agreement, which contained a proviso that defendant could not make surcharges, was submitted to defendant, it refused to execute it. On March 1, 1944, plaintiff wrote to defendant, again calling its attention to the matter and to a public notice issued by the Federal Communications Commission that the surcharges on interstate and foreign long distance telephone calls were prohibited in the

* The Supreme Court rendered a similar decision on May 28, 1945, in *Hotel Astor, Inc. v. United States*, 325 U.S. 837, on an appeal from a decision of the District Court of the United States for the Southern District of New York, reported in 57 Fed. Supp. 451.

tariff provisions that had been filed by the telephone companies and therefore the collection of any such extra charges by a hotel was illegal under the provisions of the Communications Act of 1934; (Act of June 19, 1934, c. 652, §203, 48 Stat. 1070, 47 U.S.C.A. §203). Finally, on April 3, 1944, plaintiff addressed the letter to defendant upon which its claim in this action is based; plaintiff stated therein that "As the hotels have now had ample opportunity to bring their practices into accord with this provision [forbidding surcharges] of the Company's tariffs, the Company will hereafter make commission payments only to hotels which have advised us in writing of their present and continuing compliance with the tariff provisions which limit the charges for toll messages to those set forth therein. This may be done either through signing the previously submitted agreement or the attached letter. Commissions will be paid on toll calls made after April 15, 1944, only where such a signed agreement or letter is in our hands."

Notwithstanding the notice of February 12, 1944, purporting to terminate defendant's contract, all the business relations between plaintiff and defendant continued in all respects exactly as before until July 3, 1945, when a new written agreement was entered into by the parties in which it was provided that no surcharges were to be made or collected by defendant. Meanwhile, plaintiff continued to furnish the telephone service, and defendant continued to pay plaintiff the monthly rental for the equipment, to collect from its guests the rates established by plaintiff's tariffs, to impose and collect the surcharges on toll messages, and to retain the commissions, plaintiff, however, refusing after April 15, 1944, to recognize defendant's right to such retention. The commissions thus withheld amounted, during the period from April

15, 1944, to July 3, 1945, to the sum of $5,670.28, to recover which amount plaintiff brought the present action.

The learned trial judge entered judgment in favor of defendant, from which judgment plaintiff appeals.

The rulings of the Pennsylvania Public Utility Commission and the Federal Communications Commission definitely stamped the surcharges imposed by hotels as illegal under the Public Utility Law of the Commonwealth and the Federal Communications Act respectively, a result which necessarily followed from the fact that such added charges were contrary to the published tariffs of the telephone companies. It was clearly, therefore, plaintiff's duty to take prompt measures to force defendant to abandon the practice. This it could have done either by disconnecting the service, which would naturally have caused inconvenience to the hotel guests, or by the obvious remedy of instituting proceedings to enjoin defendant from collecting the additional charges. Instead, however, of taking such action, plaintiff allowed defendant to continue making the charges, not only after July 21, 1942, when it was directed by the Pennsylvania Public Utility Commission to institute the necessary preventive measures, but even after February 12, 1944, when it denounced its contract with defendant, and after March 1, 1944, when it again stated to defendant that the collection of such extra charges was contrary to the company's tariff provisions and therefore illegal. What course did it then actually pursue? In its letter of April 3, 1944, on which it now relies, it notified defendant that it would not pay commissions until defendant discontinued the imposition of the surcharges. This was not a stoppage of the illegal practice which it was incumbent upon plaintiff to effect. On the contrary it was, on analysis, and however well intended,

merely allowing defendant to continue indefinitely to make the surcharges and thereby improperly collect moneys from its guests in violation of the law, while meanwhile plaintiff would thereby escape the payment of commissions to defendant for the latter's services in collecting the toll charges. Under such an arrangement, if defendant chose to continue making the surcharges, as in fact it did for more than a year thereafter, without any action by plaintiff to prevent it, the latter would be greatly profiting thereby,— to the actual extent, indeed, as shown by its claim in the present action, of the sum of $5,670.28. Though superficially, therefore, plaintiff was imposing a penalty upon a "disobedient" agent, the fact is that under the letter of April 3, 1944, it became more to plaintiff's financial interest that the illegal practice should go on than that it should be discontinued. Plaintiff could not thus evade its legal duty to prevent the further collection of the excessive telephone charges. For a court to enforce the provision of the letter of April 3, 1944, in regard to the commissions would be to aid plaintiff to recover on a claim the right to which would rest solely upon the continuance of a practice admittedly contrary to law and to public policy, and which it could, and in the performance of its legal duty should, have stopped forthwith.

In view of the conclusion thus reached it becomes unnecessary to discuss the contention made by defendant and adopted by the court below, that the notice of February 12, 1944, terminating the written contract between the parties, was not in fact effective for that purpose, because plaintiff, instead of implementing such notice, continued its relations with defendant as theretofore, and that consequently it could not thereafter unilaterally, by its letter of April

3, 1944, change the term of the contract with reference to the commissions.

Judgment affirmed.

Mr. Justice BELL dissents.