**Young Soon OH and Bernice Schatz on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**AT & T CORPORATION, Defendant.**

**Civil Action No. 99–2161.**

United States District Court,
D. New Jersey.

Dec. 10, 1999.

James V. Bashian, Law Offices of James V. Bashian, P.C., West Fairfield, NJ, Joshua N. Rubin, Abbey, Gardy & Squitieri, LLP, New York City, for Plaintiffs Young Soon Oh and Bernice Schatz, on behalf of themselves and all others similarly situated.

Robert D. Towey, David G. Tomeo, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C., Roseland, NJ, Patricia C. Lukens, AT & T Corp., Basking Ridge, NJ, for Defendant AT & T Corporation.

WALLS, District Judge.

This matter is before the court on the motion by defendant AT & T for judgment on the pleadings to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c) for failure to state any claim for relief, or alternatively, on the grounds that the Federal Communications Commission ("FCC") has primary jurisdiction over the case. The defendant's motion to dismiss Count VI of the complaint is granted; the mo-

tion to dismiss all other counts is denied. The court instead transfers this action to the FCC for resolution of all matters within its jurisdiction, and orders that all proceedings before this court be placed in civil suspense until resolution by the FCC or until otherwise ordered by this court.

## FACTUAL BACKGROUND

The plaintiffs began this putative consumer class action against AT & T in March 1999 by filing a complaint in the Superior Court of New Jersey, Bergen County. Defendant removed the case to this court. In August 1999, plaintiffs filed an amended class action complaint ("Complaint"), which alleges that defendant AT & T violates the tariffs that it is required to file with the FCC pursuant to 47 U.S.C. § 203(a). Specifically, FCC Tariffs 1 (May 14, 1998) and 27 (November 25, 1998) require AT & T to provide "up to two requests for listings within the area code dialed ... on each call to Directory Assistance," for a charge of $1.40 per call. *See* AT & T Br., Exh. A.

The plaintiffs purport not to challenge the provisions of these tariffs, including the applicable rate. Instead, they charge that AT & T, by means of manipulative and deceptive acts, prevents its customers from availing themselves of the second request. Complaint ¶ 2. Plaintiffs allege that in order to minimize time and expense, AT & T operators and recordings respond to calls to Area Code Directory Assistance with the questions, "What city, please?" and "What listing, please?" The plaintiffs claim that each of these questions "implies, and unfairly manipulates and misleads the customer to believe, that the customer will have an opportunity for a second information request after the customer receives a response to his or her first request." Complaint ¶¶ 16–17. However, they allege that AT & T provides no such additional opportunity.

Plaintiffs also charge that AT & T refuses to provide a credit allowance to its customers who are aware that they are entitled to two requests, and who would in fact request two phone numbers "if they had not been prevented from doing so by AT & T's manipulative and misleading procedure." Complaint ¶ 21. They assert that although AT & T provides a telephone number to call to request credits, neither the automated message menu nor a human operator provides an avenue for a customer to receive credits in return for the practice described above.

Plaintiffs Oh and Schatz, who have used AT & T's Area Code Directory Assistance, claim to have been denied their right to a second listing. They style six causes of action for: (1) breach of contract, purportedly based on AT & T's service contracts with themselves and other class members; (2) the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8–1 *et seq.*; (3) common law fraud, based on AT & T's purported misrepresentations that the plaintiffs were required to make one request at a time; (4) negligent misrepresentation, due to AT & T's purported representation that the plaintiffs would have the opportunity to make a second request; (5) violation of § 201(b) of the Federal Communications Act, 47 U.S.C. § 201(b); and (6) injunctive relief. Plaintiffs seek declaratory relief, compensatory damages, treble damages pursuant to the NJCFA, prejudgment interest on actual damages, an injunction to prevent AT & T from continuing its challenged practices, and costs and attorneys' fees.

Defendant, in moving for judgment, requests that the court dismiss the complaint for failure to state a claim for relief or pursuant to the doctrine of primary jurisdiction.

## ANALYSIS

1. *Standard for Judgment on the Pleadings*

Fed.R.Civ.P. 12(c) allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." While

the timing of a Rule 12(c) motion differs from a motion to dismiss pursuant to Fed. R.Civ.P. 12(b), the court should apply the same legal standards to both types of motions. *Turbe v. Government of Virgin Islands,* 938 F.2d 427, 428 (3rd Cir.1991).

■ On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3rd Cir.1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3rd Cir.1998); *see also* 5A Wright & Miller, *Federal Practice & Procedure* § 1357 at 299 (2nd ed.1990).

2. *Whether the Filed Tariff Doctrine Bars State Law Claims (Counts I–IV)*

AT & T argues that the plaintiffs' state law claims must be dismissed pursuant to the filed tariff doctrine.[1] The defendant claims that as a "common carrier" it is required to file schedules of charges with the FCC pursuant to 47 U.S.C. § 203(a); that such tariffs "exclusively govern the legal relationship between AT & T and its subscribers," including issues related to directory assistance calls; and that the plaintiffs are wholly precluded under the filed tariff doctrine from asserting state law claims concerning matters covered by the tariffs. The plaintiffs object that this rule bars only state law claims that purport to contradict or supplement the filed schedules. They claim that, because they do not challenge the tariff, but instead seek to enforce AT & T's obligations filed with the FCC, their state law claims must be sustained.

Initially, the court notes that *MFS International, Inc. v. International Telcom,* 50 F.Supp.2d 517 (E.D.Va.1999), relied on by plaintiffs, is inapposite. There, the court considered whether a telecommunications provider and its customers could agree to a shorter statute of limitations than that provided in the Federal Communications Act, 47 U.S.C. §§ 151 *et seq.* ("FCA"). The court observed that the counterclaims for breach of contract and conversion might be subject to preemption or dismissal if they were "revealed to be actions based on the ... tariff masquerading as state law claims," but did not reach the issue. *Id.* at 520 n. 9.

■ Although certain principles of the filed tariff doctrine are well settled, the jurisprudence regarding the continued existence of state law claims in face of the FCA is complex. The Supreme Court recently iterated the basic contours of the doctrine in *American Telephone and Telegraph v. Central Office Telephone,* 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). There, a buyer of long-distance services alleged that AT & T had failed to

---

1. As the defendant notes, the plaintiffs' sixth cause of action for injunctive relief does not state an actionable claim. The court agrees and dismisses the sixth count with prejudice.

deliver certain services promised in addition to those set forth in the tariff, and brought state law claims for breach of contract and tortious interference with contractual relations. Justice Scalia commented that the century-old filed rate doctrine developed under the Interstate Commerce Act applied equally to the FCA, and explained:

> [T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. (Quoting *Louisville & N R Co v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915)).

*Id.* 524 U.S. 214, 118 S.Ct. at 1962–63. The Court held that because the claimant sought privileges other than those allowed in the tariff, both of its state law claims were precluded. *Id.* 524 U.S. 214, 118 S.Ct. at 1964–66. Justice Scalia wrote that this holding was made notwithstanding the saving clause of the FCA, which dictates that "[n]othing in this chapter shall in any way abridge. or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. "Th[e saving] clause ... cannot in reason be construed as continuing in [customers] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself." (Citation omitted.)

That opinion did not address the continued existence of state law claims that purport to enforce a tariff. Likewise, Chief Judge Posner in *Cahnmann v. Sprint Corp.*, 133 F.3d 484 (7th Cir.1998), relied on by defendant, concluded that FCA extinguishes the right to bring state law claims "when the effect of the suit would be to *challenge* a tariff." *Id.* at 488 (emphasis added). However, he allowed that if a carrier violates a tariff to the detriment of a customer, a claimant would be free to proceed under federal law either by an administrative FCC proceeding or by a suit for damages in federal district court. *Id.* at 487; *see also* 47 U.S.C. §§ 206–209.

Here, plaintiffs claim, and defendant concedes, that AT & T is required by its tariffs to answer up to two requests for listings. Because the purpose of the present action is to *enforce* AT & T's obligations under the tariffs, the *Central Office* and *Cahnmann* cases do not guide this court. For the reasons that follow, the court need not resolve the issue whether such state law claims are barred by the filed tariff doctrine. *Cf. Marcus v. AT&T Corp.*, 138 F.3d 46 (2nd Cir.1998) (finding that state law claims concerning carrier's failure to disclose billing policies were precluded by the filed rate doctrine to the extent that they sought compensatory damages; dismissing claims to the extent they sought injunctive relief on the basis that customers were conclusively presumed to know all terms of a filed tariff.)

### 3. Whether the Plaintiffs' State Law Claims "Arise Under" Federal Law

The Third Circuit has considered whether state law claims by a carrier to collect unpaid charges for telephone service should be deemed to "arise under" federal common law or the FCA so that federal question jurisdiction is appropriate. *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1093–96 (3rd Cir.1995) determined that a collections claim by MCI was "based upon, and [drew] its life from," the tariff that it had filed with the FCC. Judge McKee reasoned that because the carrier's claim relied on the tariff, the cause of action should no longer be considered a creature of state law. *See also Marcus v. AT&T Corp.*, 138 F.3d 46, 55–56 (2nd Cir.1998) (holding that breach of warranty claim by customer of long-distance carrier "necessarily arises from

AT & T's only contract between it and its customers—the tariff filed with the FCC.... Because the tariff is filed with the FCC pursuant to the FCA ... the breach of warranty claim arises under federal law.")

This court finds that reasoning persuasive and applicable here. The sole source of the plaintiffs' state law claims is the set of tariffs filed by AT & T with the FCC. *Cf. Bauchelle v. AT & T Corp.*, 989 F.Supp. 636 (D.N.J.1997) (holding that although collection claims "and similar claims which draw their life from the tariff" were subject to uniform federal law, claims for "remote subjects such as advertising or promotional activities" were distinguishable from the *Teleconcepts* rule.) The plaintiffs' claims of breach of contract, the NJCFA, fraud, and negligent misrepresentation are grounded upon their rights found in the tariff to obtain two listings with each Directory Assistance call. The thrust of each claim is that AT & T has failed to live up to its tariff obligations. In accordance with *Teleconcepts*, the court holds that the plaintiffs' state law claims arise under federal law.

4. *Whether This Court Should Defer to the Federal Communications Commission Pursuant to the Doctrine of Primary Jurisdiction*

■ In addition to their purported state law causes of action, the plaintiffs charge that AT & T's practices constitute an "unjust and unreasonable practice" within the meaning of the FCA: "All charges, practices, classifications, and regulations for and in connection with [a] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). The FCA creates a cause of action on behalf of any person claiming to be damaged by a common carrier. 47 U.S.C. § 207. Such an aggrieved person may choose to file a complaint with the FCC pursuant to § 208, or to commence an action in any federal district court, but may not pursue both remedies. *Id.; see also Richman Brothers Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1435–46 (3rd Cir.1991).

■ AT & T moves to dismiss this count, claiming that because it complied with its duly filed tariff, and "[t]here is no allegation that AT & T fails to provide two listings per Directory Assistance call upon request," its actions are presumptively reasonable. AT & T Br. at 13; *see Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 128, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The defendant points to the Complaint to demonstrate its compliance with the tariff: in their claim for negligent misrepresentation, plaintiffs assert that "[t]he fact that AT & T requires that both requests be made at the outset of the call to Area Code Directory Assistance is a material fact." Complaint ¶ 54. By this, defendant argues, the plaintiffs admit that AT & T complies with its tariff because they may request two listings, albeit at the beginning of a call. AT & T Reply Br. at 5–6.

The plaintiffs protest that their entire complaint concerns AT & T's failure to comply with its tariff obligations. In contrast to the defendant's characterization, the plaintiffs claim that AT & T's practice of prohibiting callers from making one request at the beginning of a call, and a later request at the end of the first listing, violates the applicable tariffs. They assert that AT & T's defense that it has complied with the tariff is a "mere factual denial of the well-pleaded allegations of the complaint." The court agrees; the defendant's motion to dismiss the FCA claim is denied on that basis.

■ However, the defendant presents a more compelling argument that this court should decline to decide the issues raised here: AT & T asserts that the court should defer to the FCC under the doctrine of primary jurisdiction, explained by the Third Circuit:

The doctrine of primary jurisdiction has been developed by courts in order to avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court. Under the doctrine, a court should refer a matter to an administrative agency for resolution, even if the matter is otherwise properly before the court, if it appears that the matter involves technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise. *MCI Communications Corp. v. American Tel. & Tel. Co.*, 496 F.2d 214, 220 (3rd Cir.1974). *Teleconcepts* cautioned that "[c]ourts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.'" 71 F.3d at 1104. Yet, the Third Circuit relies upon the Supreme Court decision in *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) that the doctrine is appropriate when an action otherwise within a court's jurisdiction "raises a question of the validity of a rate or practice included in a tariff filed with an agency." *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1435 n. 3 (3rd Cir.1991).

■ A court should consider four factors in deciding whether to defer to an administrative agency: (1) whether the issues presented are within the conventional expertise of judges; (2) whether the questions lie peculiarly within the agency's discretion or require the exercise of agency expertise; (3) whether there exists a danger of inconsistent rulings; and (4) whether a prior application has been made to the agency. *American Telphone & Telegraph, Co. v. People's Network, Inc.*, 1993 WL 248165 (D.N.J.1993). Presently, despite the plaintiffs' objections that the resolution

of their claims does not require the expertise of the FCC, this court finds otherwise. Courts have consistently found that claims which allege unreasonable practices in violation of § 201(b) fall within the primary jurisdiction of the FCC. *See, e.g., Total Telecommunications Services v. American Telephone and Telegraph Co.*, 919 F.Supp. 472, 480 (D.C.Cir.1996); *Ambassador, Inc. v. United States*, 325 U.S. 317, 324, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945); *Richman Bros. Records*, 953 F.2d at 1435. The plaintiffs' state law claims, now recast as federal claims, seek to enforce the same rights as the FCA—their interests under AT & T's tariffs. Resolution of all of the claims will evidently turn on interpretation of AT & T's tariff obligations. The plaintiffs cannot maintain a breach of contract action without reference to the tariffs, admittedly the only contract term sought to be enforced. Pl. Br. at 6. Likewise, their claims for fraud and negligent misrepresentation turn on a finding that the plaintiffs were entitled to make two requests at specified times during a call; this question necessitates an interpretation of the rights provided by the tariffs.

■ This court therefore concludes that referral of this case to the FCC is the appropriate course of action. Our Circuit Court has ruled that because of potential prejudice to the plaintiffs, stay of an action pending an agency determination of liability is a more appropriate course than outright dismissal. *Laveson v. Trans World Airlines*, 471 F.2d 76, 83 (3rd Cir.1972); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 496 F.2d 214 at 224 (3rd Cir.1974); *see also American Telephone & Telegraph Co. v. People's Network, Inc.*, 1993 WL 248165, at *15 (D.N.J. March 31, 1993) ("Although some courts have held that the doctrine of primary jurisdiction requires dismissal of the lawsuit pending resolution by the FCC, ... the majority of courts have indicated that a stay of the Federal court action is the more appropriate course of action."). Accordingly, this court refers this matter to the FCC for a

determination of defendant's liability and all other matters within its jurisdiction. The action will be placed in civil suspense until the FCC issues its decision. Either party may petition to reactive the case, if appropriate, after the FCC has resolved the issues within its jurisdiction.

## CONCLUSION

The defendant's motion to dismiss with prejudice Count VI of the Complaint for injunctive relief is granted. The motion to dismiss Counts I, II, III, IV, and V is denied. The court refers the action to the Federal Communications Commission to determine defendant's liability and all other matters within its jurisdiction. Proceedings before this court are placed in civil suspense pending further order.

## ORDER

This matter is before the court on the motion by defendant AT & T for judgment on the pleadings to dismiss the Amended Class Action Complaint pursuant to Fed. R.Civ.P. 12(c) for failure to state any claim for relief, or alternatively, on the grounds that the Federal Communications Commission ("FCC") has primary jurisdiction over the case.

Upon consideration of the submissions of the parties, and for good cause shown: It is on this day of December, 1999:

ORDERED that Count VI of the Complaint for injunctive relief be dismissed with prejudice; and it is further

ORDERED that this action be referred to the Federal Communications Commission for a determination of defendant's liability and all other matters within its jurisdiction; and it is further

ORDERED that further proceedings before this court be placed in civil suspense. Either party may petition to reactivate the proceedings, if appropriate, after the FCC issues its decision.