Theodore J. NIEHAUS, Corinne M. Allen, Olen Frank Philbrick, individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

AT & T CORP., Defendant.

No. 01 CIV. 3030(JSR).

United States District Court, S.D. New York.

Sept. 6, 2002.

Jeffrey Horn, Richard Cohen, Peter D. St. Phillip, Jr., Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, NY (D. Michael Kratchman, Southfield, MI, Elwood S. Simon, Esq. (admitted pro hac vice per order dated June 11, 2001), Michael Wassmann, Esq. (admitted pro hac vice per order dated July 23, 2001), Elwood S. Simon & Associates, P.C., Birmingham, MI, Gordon S. Gold, Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C., Southfield, MI, of Counsel), for Plaintiffs.

Elizabeth M. Sacksteder, Sidley Austin Brown & Wood, New York City, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This putative class action alleges that defendant AT & T Corp. ("AT & T") falsely billed customers for Internet-generated international calls to the Pacific island nations of Vanuatu and Niue, when in fact the calls had been re-routed to less exotic, and less expensive, destinations. By Order dated September 28, 2001, the Court (a) granted defendant's motion to dismiss plaintiffs' claims brought under 47 U.S.C. § 401 and 47 U.S.C. § 228; (b) denied defendant's motion to dismiss plaintiffs' claims brought under 47 U.S.C. § 201, 47 U.S.C. § 203, and state law; (c) granted defendant's alternative motion to initially refer to the Federal Communications Commission ("FCC") plaintiffs' claims brought under 47 U.S.C. § 201 and 47 U.S.C. § 203 (the "referred claims"); and (d) stayed all further proceedings in this Court regarding the referred claims, as well as the pendant state-law claims, pending notification of the FCC's rulings on the referred claims. Although the Court indicated it would eventually issue a Memorandum elaborating the reasons for this Order, the parties subsequently advised the Court that they expected to settle, thus obviating the need for further labor

by the Court. Having heard nothing more from counsel, however, the Court here renders its opinion.

The three named plaintiffs allege that they, as others similarly situated, were billed for Internet modem calls to either Vanuatu or Niue that they neither made nor authorized, and that, in any event, were re-routed to closer destinations. On their bills, the charges for these calls were labeled as "Direct Dialed Calls," "International," or "Regulated Charges." When the respective plaintiffs called to inquire about the charges, AT & T informed them that the calls were to adult entertainment web sites, and had been dialed through computer modems. Denying he had ever made or authorized such calls, plaintiff Niehaus refused to pay and AT & T submitted his bill to a collection agency. The similar denials of plaintiff Allen were eventually accepted and she received a credit for the portion of the bill that she paid. Finally, plaintiff Philbrick, though protesting that he never made or authorized the calls, eventually paid the $257.69 charged to him. *See* Amended Complaint ("Am. Cpl.") ¶¶ 5–13, 29, 58.

Drawing on newspaper and magazine articles, as well as materials from the case of *FTC v. Verity Intl.*, 124 F.Supp.2d 193 (S.D.N.Y.2000), the Amended Complaint hypothesizes that these allegedly incorrect charges were the product of certain questionable arrangements that certain common carriers have allegedly made in recent years with certain entertainment service providers. Under these arrangements, a billing aggregator, or "Service Bureau," obtains a block of numbers from some "obscure" country that needs revenue. Am.Cpl. ¶ 28. In return, the foreign country is promised per minute revenue each time the number is dialed, even if the call never actually reaches the foreign country. The Service Bureau then sells the numbers to "entertainment service providers,"

who provide psychic reading lines, chat rooms, and pornography on the Internet, and bill users through their phone lines. Sometimes, however, even someone just browsing the ubiquitous and unsolicited Internet advertisements for these services can inadvertently download a dialing mechanism that automatically generates such a call. In any event, the common carrier (here, AT & T) bills and collects for the calls and remits a portion of the money collected to the Service Bureau, which then splits its proceeds with the entertainment service provider. Alternatively, the carrier may remit the money directly to the foreign government, which then provides an agreed-upon portion of the revenue to the Service Bureau. Am.Cpl. ¶¶ 28–32, 59.

These arrangements, according to the Amended Complaint, led to improper charges to the plaintiffs and others similarly situated because: (1) the Service Bureau sent out fictitious billing information to AT & T, which, because of the foregoing arrangements, was unable to adequately check the information in the way it could check ordinary calls, *see* Am.Cpl. ¶¶ 50–56, 107–109; and (2) even where the calls were properly authorized by the subscriber, the subscriber was billed at rates applicable to far-away, obscure countries, whereas the Service Bureau routed the actual calls to closer, less expensive sites, a fact allegedly known to AT & T, *see* Am.Cpl. ¶¶ 58, 64, 65, 70, 112–114.

■ As an initial matter, the defendant argues that the entire Amended Complaint should be dismissed because it does not so much allege facts as speculations: in essence, it premises that AT & T must have been engaging here in an instance of a reputed general practice of common carriers. The premise of the Amended Complaint is, however, that AT & T bills for unauthorized calls to places as obscure as Vanuatu or Niue are most likely explicable

as a product of the reputed general practice described above. While thin, the inference is not unreasonable.

Moreover, it is not really accurate for defendant to contend that the Complaint rests entirely on inference and conjecture from the purported practices of other carriers. Rather, the Complaint alleges, *inter alia*, that AT & T has been found to have entered into such an arrangement at least once before; *see* Am.Cpl. ¶¶ 43–44; that, in that instance, calls were "short-stopped" and re-routed in the manner here alleged, *see* Am.Cpl. ¶¶ 64–65; and that testimony by a former AT & T officer indicated that similar arrangements existed between AT & T and 26 or more foreign countries and that the practice of short-stopping was widespread at AT & T, *see* Am.Cpl. ¶¶ 45, 64, 65. This is more than sufficient to justify the premise on which plaintiffs ground their complaint.

Accordingly, it cannot be said that the Amended Complaint fails to give "the defendant fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Defendant's first argument must therefore be rejected.

Defendant also argues, however, that the allegations of the Amended Complaint, even when read (as they must be here) most favorably to plaintiffs, fail to state claims under any of the four statutory provisions here invoked—47 U.S.C. §§ 228(d), 401, 201(b), and 203(c)—and fail to make out the alleged state-law claims of breach of contract and unjust enrichment. We consider each of the claims in turn:

■ (a) *47 U.S.C. § 228(d).* The parties agree that federal law distinguishes between "transmission services" (including the standard, direct-dialed call) and "pay-per-call" services (such as those accessed through a "900" number). Under the "filed rate doctrine," a telephone subscrib-

er is responsible for paying all charges billed to the subscriber's telephone number at the applicable filed rate, whether or not the subscriber made or authorized the call. *See Verity*, 124 F.Supp.2d at 200–01. By contrast, whether or not a subscriber to a "pay-per-call" service is responsible for the pay-per-call charge (which typically involves more than just the phone charge) is a matter of ordinary contract law and thus subject to the defense that the subscriber never authorized the call or otherwise agreed to pay for it. *Id.* at 201–02.

■ Section 228(d) of Title 47 proscribes certain practices regarding pay-per-call services. Here, however, the alleged violations relate, not to pay-per-call services, but to transmission services, and thus cannot be the subject of claims under 47 U.S.C. § 228(d). Specifically, "pay-per-call services" are defined in 47 U.S.C. § 228(i) as follows:

(1) The term "pay-per-call services" means any service—

(A) in which any person provides or purports to provide—

(i) audio information or audio entertainment produced or packaged by such person;

(ii) access to simultaneous voice conversation services; or

(iii) any service, including the provision of a product, the charges for which are assessed on the basis of the completion of the call;

(B) for which the caller pays a per-call or per-time-interval charge that is greater than, or in addition to, the charge for transmission of the call; *and*

(C) which is accessed through use of a 900 telephone or other prefix or area code designated by the Commission

.    .    .    .    .

47 U.S.C. § 228(i) (emphasis supplied).

Here, there is no suggestion anywhere in the Amended Complaint that the ser-

vices for which plaintiffs were allegedly misbilled were accessed through use of a 900 number or other prefix or area code designated by the Commission, or, indeed, that they were for services in addition to the charges for transmission of the calls. Rather, the Amended Complaint is premised on the assertion that what AT & T was providing, albeit improperly, was a transmission service, and that it was billed, albeit fraudulently, as such. Accordingly, plaintiffs' claim under § 228(d) must be dismissed.

■ (b) *47 U.S.C. § 401.* Under 47 U.S.C. § 401, private parties can bring claims for declaratory and injunctive relief to enforce a standing order of the FCC. *See* 47 U.S.C. § 401(b). In this case, plaintiffs claim that they are entitled to such relief because defendant's practices allegedly violate 47 C.F.R. §§ 64.1506, 64.1507, 64.1510, and the FCC's order enacting these regulations. *See* Am.Cpl. ¶¶ 98–102. The regulations, however, deal, respectively, with "pay-per-call" charges, toll-free numbers, and collect calls. As explained above, the charges here in issue do not fall within the definition of pay-per-call services; nor is there any allegation that they are toll-free services or collect-call services. In fact, the FCC's enacting order to which the Amended Complaint refers includes a separate notice of *proposed* rules addressed to the separate problem, here involved, of common carriers using international numbers to provide and bill for entertainment services; but because the proposed rules have not been enacted, there is simply no applicable or-

der for plaintiffs to enforce.[1] Accordingly, plaintiffs' claim under § 401 must be dismissed.

■ (c) *47 U.S.C. §§ 201(b) & 203(c).* Section 201(b) mandates that all "charges, practices, classifications, and regulations ... be just and reasonable" and declares that all charges, practices, and regulations that are "unjust or unreasonable" are "unlawful." *Id.* Relatedly, section 203(c) prohibits "[o]vercharges and rebates," as well as related practices. *Id.* Such practices as billing for calls never made, short-stopping and re-routing calls, and remitting portions of the charges to entertainment service providers appear, at least facially, to violate these provisions, and therefore plaintiffs' allegations to that effect are sufficient at this stage to survive a motion to dismiss.

■ However, the claims under 47 U.S.C. § 201(b) and 47 U.S.C. § 203 also implicate the doctrine of primary jurisdiction. Under the doctrine of primary jurisdiction, a federal court may refer a matter extending beyond the " 'conventional experience of judges' " or " 'falling within the realm of administrative discretion' " to the appropriate administrative agency. *National Communs. Assoc., Inc. v. AT & T Co.,* 46 F.3d 220, 222–23 (2d Cir.1995) (quoting *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). The Second Circuit, while acknowledging that there is no "fixed formula" for determining when to refer a case to the appropriate agency, has identified four factors to aid in the analysis:

---

1. The Court does not reach the question of whether FCC regulations are enforceable "orders" under section 401(b). *Compare Hawaiian Tel. Co. v. Public Utils. Comm'n,* 827 F.2d 1264, 1270-2 (9th Cir.1987) (holding that an FCC regulation is an "order") *with New England Tel. & Tel. Co. v. Public Utils. Comm'n,* 742 F.2d 1, 5, 8 (1st Cir.1984) (Breyer, J.) ("[P]rivate parties have no inherent right to

enforce FCC rules," and "to interpret section 401(b) more broadly ... threatens to interfere seriously with the well established principle that the enforcement of the Communications Act is entrusted primarily to an administrative agency.") (internal quotation marks omitted). The Second Circuit has recently declined to rule on the issue. *See Conboy v. AT & T,* 241 F.3d 242, 252 n. 11 (2d Cir.2001).

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*National Communs. Assoc., Inc.,* 46 F.3d at 222.

■ In the instant case, the claims brought under § 201(b) involve numerous highly technical questions regarding, *e.g.,* the ways in which AT & T and the Service Bureau allegedly shared information and rerouted the calls—questions the FCC is better equipped than the Court to evaluate in the first instance. Moreover, the "reasonableness" determination required by § 201(b) is inherently a discretionary question within the agency's purview. *See Ambassador, Inc. v. United States,* 325 U.S. 317, 324, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945) (claims "grounded in [a] lack of reasonableness" in the first instance "must be addressed to the Commission and not as an original matter brought to the court."); *In re Long Distance Telecomm. Litig.,* 831 F.2d 627, 631 (6th Cir.1987) (holding that cases involving claims of "[un]reasonableness" must be referred to the FCC because these are "determination[s] that Congress has placed squarely in the hands of the FCC") (internal quotation marks omitted); *MCI Telecommun. Corp. v. Dominican Commun. Corp.,* 984 F.Supp. 185, 190 (S.D.N.Y.1997) ("[T]he resolution of the unreasonable practice counterclaim requires an interpretation of the [tariff] which the FCC is better suited to resolve."); *Vortex Commun., Inc. v. American Tel. & Tel. Co.,* 328 F.Supp. 19, 20–21 (S.D.N.Y.1993) (holding that claim that carrier's termination of plaintiff's three 900 numbers was unjust and unrea-

sonable involved technical and policy considerations warranting referral to the FCC).

Similarly, determination as to whether defendant's practices violated § 203(c) involves evaluation of numerous technical issues regarding the nature of the re-routing and splitting of fees here alleged. Moreover, while the statute prohibits common carriers from charging in excess of the applicable tariff rate and from remitting any portion of its revenue to third parties, there is little or no case law applying these broad prohibitions to the factual scenario here alleged, making it highly valuable to have the issues addressed in the first instance by an agency that can bring to bear its expert knowledge of all relevant factors.

Accordingly, the Court deems it appropriate and valuable to refer the claims under §§ 201(b) and 203(c) to the FCC for initial determinations on the merits, subject to review by this Court.

(d) *State-law claims.* In addition to the federal claims, the Amended Complaint asserts state-law claims grounded in breach of contract and unjust enrichment. Since these claims have not been dismissed, the question remains as to whether to stay these claims while the FCC considers the referred claims. *See Reiter v. Cooper,* 507 U.S. 258, 268–69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (noting that a court may, in its discretion, stay proceedings pending determination by an administrative agency).

■ In this case, the state-law claims effectively depend on resolution of the referred claims. Specifically, the breach of contract claim is premised on the assertion that plaintiffs' contracts with AT & T incorporated federal law standards, and that by breaching federal law, AT & T thereby breached its contract. *See* Am.Cpl. ¶¶ 123–24. Similarly, plaintiffs ground

their claim of unjust enrichment in federal law, arguing that AT & T derived illegal profits from agreements that violated federal law. *See* Am.Cpl. ¶¶ 129–30. Since resolution of the state-law claims therefore depends on the resolution of the referred federal claims, it is appropriate to stay further proceedings on the state-law claims until the referred claims return to this Court.[2]

For the foregoing reasons, the Court hereby reaffirms its Order of September 28, 2001, and further reminds the parties that, under the terms of that prior order, they are required to apprise the Court in writing, by no later than September 30, 2002, as to the status of the referred proceedings before the FCC.

SO ORDERED.

---

**2.** Since defendant concedes that at least one of the named plaintiffs, Mr. Philbrick, has standing to raise all claims here remaining, the Court will also defer ruling until the case resumes on defendant's challenges to the standing of the other two plaintiffs, as well as to the not-yet-ripe issue of class certification.