**MID-PLAINS TELEPHONE COMPANY, INC., Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION OF WISCONSIN, Charles H. Thompson, Chairman, Mary Lou Munts, Commissioner, and Cheryl L. Pofahl, Commissioner, Defendants.**

No. 89-C-318-S.

United States District Court,
W.D. Wisconsin.

July 26, 1989.

Steven M. Streck of Axley Brynelson, Madison, Wis., for plaintiff.

Robert J. Mussallem, Public Service Com'n of Wisconsin, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff, Mid–Plains Telephone Company, Inc., brings this action for declaratory and injunctive relief against the defendant Public Service Commission of Wisconsin (PSC) and several of its officers seeking to set aside a Public Service Commission order and enjoin its enforcement. Plaintiff asserts that the residual rate making procedure endorsed and followed by the PSC in issuing its order is contrary to the Jurisdictional Separations Procedures, 47 C.F.R. part 36, of the Federal Communications Commission (FCC) and that use of residual rate making is in violation of the Commerce and Equal Protection Clauses of the United States Constitution.

Defendants assert that plaintiff's claims are barred by the Johnson Act, 28 U.S.C. § 1342, that this Court should abstain from taking jurisdiction over the claims while state proceedings relating thereto are pending, that this Court should defer any determination of the claims to the FCC under the doctrine of primary jurisdiction, and finally, that the claims fail as a matter of law. The action is currently before the Court on defendants' motion to dismiss the claims on each of the above grounds and on plaintiff's motion for summary judgment.

This Court has jurisdiction under 28 U.S.C. §§ 1337(a), 1343(a)(3), 1331 and 47 U.S.C. § 401(b).

The undisputed facts in this matter are set forth as follows:

### FACTS

Plaintiff, Mid–Plains Telephone Company, Inc., is a Wisconsin corporation in the business of providing customers intrastate and interstate telephone service. The defendant Public Service Commission of Wisconsin is a Wisconsin State agency with authority to supervise and regulate public utilities in Wisconsin. The individual defendants are officers of the defendant Public Service Commission. Because plaintiff's facilities are used to provide both intrastate and interstate services, an allocation of investments, reserves, expenses and taxes must be made between the intrastate and interstate portions of its business.

Pursuant to FCC rules, certain telephone companies, including the plaintiff, have the option of being compensated for interstate toll service either on a cost basis or by average schedules. Companies which choose to settle their interstate revenue requirements on a cost basis perform cost separation studies, pursuant to 47 C.F.R. 36, which separate expenses, taxes and plant use between interstate and intrastate telephone service. These companies are referred to as "cost companies." "Average schedule companies" choose to settle their interstate revenue requirements based on average schedules which reflect jurisdictionally separated cost characteristics deemed by the FCC to be representative of an average exchange character of limited size. The average schedules were developed to portray a representative company and were based on financial data from 255 cost company study areas and 489 average schedule companies.

Plaintiff has opted to be compensated as an average schedule company. As a consequence of its choice to be an average schedule company, plaintiff is not required by the FCC to prepare the cost study pursuant to 47 C.F.R. 36 in connection with interstate reimbursement.

On January 4, 1988, plaintiff filed an application with the defendant PSC for authority to increase intrastate rates. On February 11, 1988, plaintiff petitioned defendant PSC for a declaratory ruling concerning the authority of the PSC to regulate it on a total company basis. Notwithstanding its option to be treated as an average schedule company for federal purposes, plaintiff prepared a cost separation study in conformance with the requirements of 47 C.F.R. Part 36. Plaintiff requested that the PSC use the cost separation study to determine its intrastate revenue requirements.

Defendant PSC refused this request, choosing instead to determine the amount of recovery for intrastate rates based upon the residual rate making method. Under the residual rate making method the defen-

dant PSC determines a reasonable level of expenses and a reasonable return on the net investment rate base for the total company and then deducts the amount of average schedule payments received for the company's interstate settlement from the total company revenue requirement to determine the intrastate portion of the total company revenue requirement. Intrastate rates are then established to recover this residual amount.

Plaintiff's petition for a declaratory ruling concerning the authority of the defendant PSC to regulate average schedule companies on a total company basis, and plaintiff's application for authority to increase intrastate telephone rates were heard together by the defendant PSC on September 27, 1988 through September 28, 1988. On March 15, 1989 said defendant issued an order denying plaintiff's request to have its intrastate settlement rates determined by the cost basis method. The order required the plaintiff to refund $220,-265 to customers by May 31, 1989, on the basis of access lines and service during the refund period from October 8, 1987 to March 31, 1989. It further required plaintiff to submit a plan to the defendants for approval as to how refunds will be made by April 14, 1989, and that plaintiff file a report by May 31, 1989 containing the total refund amount for each class of customer for the period October 8, 1987 to March 31, 1989, detailing plaintiff's efforts to identify customers eligible for refunds. The order further requires plaintiff to place into effect by April 1, 1989 an approved plan which will reduce Mid–Plains annual revenue by $17,459 and that Mid–Plains submit such a plan for defendants' approval by March 22, 1989. It further requires Mid–Plains to submit tariffs to reflect the changes authorized in the order on or before March 31, 1989.

## MEMORANDUM

Plaintiff's principal claim is that 47 C.F.R. part 36 is a preemptive FCC rule which must be applied by states for purposes of intrastate rate making. Plaintiff therefore contends that failing to apply its part 36 cost study is directly contrary to an FCC order and creates a cause of action under 47 U.S.C. § 401(b). Additionally, plaintiff asserts the residual ratemaking inherently exceeds state authority and violates the Equal Protection and Commerce Clauses of the Constitution.

Before addressing the merits of the plaintiff's claims the Court must examine defendants' Johnson Act, abstention and primary jurisdiction arguments. The Court's decision to decline jurisdiction under any one of those three theories would necessarily render further considerations of the claims moot.

## JOHNSON ACT

Defendants' first contention is that this Court is deprived of subject matter jurisdiction over the plaintiff's claims by the Johnson Act, 28 U.S.C. § 1342, which provides as follows:

The district courts shall not enjoin, suspend, or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a state administrative agency or ratemaking body of a state political subdivision where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) the order does not interfere with interstate commerce; and,

(3) the order has been made after reasonable notice and hearing; and,

(4) a plain, speedy and efficient remedy may be had in the courts of such State.

■ The four conditions of the Johnson Act are conjunctive and only if all four conditions are present is the court deprived of jurisdiction. Plaintiff does not challenge defendants' assertion that elements (2), (3) and (4) are present in this case, but challenges element (1) requiring that jurisdiction be based solely on diversity of citizenship or repugnance of the order to the Federal Constitution. Plaintiff correctly argues that a suit brought pursuant to 47 U.S.C. § 401(b) is a suit for enforcement of an administrative order and is not a suit based solely upon repugnance to the United

States Constitution. Although there is clearly a relationship between a suit under § 401(b) and the Supremacy Clause of the Constitution, it has generally been held that such a suit is not based solely upon repugnance to the Constitution. *Hawaiian Tel. Co. v. Public Utilities Comm.*, 827 F.2d 1264, 1273 (9th Cir.1987). The Seventh Circuit Court of Appeals has recognized that the Johnson Act does not deprive the court of subject matter jurisdiction in a suit pursuant to 47 U.S.C. § 401(b). *Illinois Bell Tel. Co. v. Illinois Commerce Com.*, 740 F.2d 566, 571, n. 7 (7th Cir.1984). Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction must be denied as it relates to defendants' first cause of action under 47 U.S.C. § 401(b).

■ However, plaintiff makes no argument suggesting that its second and third claims are based on anything other than repugnance to the United States Constitution. Since each of the elements of the Johnson Act are satisfied concerning claims 2 and 3, those claims must be dismissed.

## ABSTENTION

After the briefs were filed in this matter, the United States Supreme Court rendered its decision in the case of *New Orleans Public Service, Inc. v. Council of New Orleans*, —— U.S. ——, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Defendants now concede that *New Orleans Public Service* controls the issues of *Younger* and *Burford* abstention in this case and precludes abstention from plaintiff's 401(b) claim. Since this Court has previously dismissed claims 2 and 3 based upon the Johnson Act, it need not consider the issue of abstention as to those claims.

## PRIMARY JURISDICTION

■ The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and the administrative agencies charged with particular regulatory duties. The application of the doctrine to the interpretation of agency-made regulation was discussed by the United States Supreme Court in *United States v. Western P.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956):

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purpose it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed ... The doctrine of primary jurisdiction thus does "more than prescribe the procedural timetable of the lawsuit." It is a doctrine allocating the law-making power over certain aspects of commercial relations. It transfers from court to agency the power which determines some of the incidents of such relations. (citations omitted)

In order to determine whether the doctrine of primary jurisdiction is applicable it is necessary for the Court to analyze the issues in dispute in this matter.

Plaintiff's position in its 401(b) claim is that states are required by 47 C.F.R. part 36 to use a cost study whenever such a study is prepared and presented by a telephone company. Part 36 contains no statement concerning its applicability to average schedule companies. Rather, plaintiff's position must be that part 36 contains the implicit directive that it must always be used at the state level, whether or not it is applicable on the federal level.

Defendants' position is that part 36 applies, on both the federal and state levels, only for cost companies and never applies to average schedule companies. Defendants assert that there is neither an express nor implied requirement that a state apply part 36 in its rate-making process where the company involved is an average schedule company for federal purposes.

47 U.S.C. § 401(b) provides as follows:

If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its attorney general, may apply to the appropriate district court of the United States for the enforcement of such order.

Therefore, the ultimate issue is whether the defendants, by declining to apply part 36 to an average schedule company, have failed to obey an FCC order.

The Court finds that part 36 is ambiguous with respect to its scope. A brief analysis of the merits of the issue indicates that resolution of this ambiguity in favor of the plaintiff's position is extremely doubtful for several reasons.

First, plaintiff's suggested interpretation is contrary to the fundamental underlying principle that the separation between intrastate and interstate service must be uniform so that the recovery of costs equals 100 percent.

> When the same plant and equipment is used to provide both interstate and intrastate services the different authorities and different authority set rates for these respective services, cost and investment must be apportioned uniformly in order to establish fair rates. (citations omitted).

*Hawaiian Tel. Co. v. Public Utilities Com.*, 827 F.2d 1264, 1275 (9th Cir.1987). If uniformity is not maintained either a utility does not receive a fair return for its investment or rate payers are required to pay more than the services are worth.

Plaintiff's proposed interpretation of the rule permits the type of overrecovery which has historically been condemned under the jurisdictional separations law. Plaintiff concedes that it conducted the cost study under part 36 and then selected to be treated as an average schedule company only because such selection permitted it to receive more than it would under its actual costs. If it is then permitted to force the state to apply part 36 to its apportionment it will necessarily recover more than 100 percent of its costs.

A second concern which calls plaintiff's interpretation into doubt is that its application of part 36 runs contrary to the express purpose for the creation of the average schedule option by the FCC. The clearly expressed intent of the FCC in establishing the average schedule option is to avoid imposing the burden of developing cost information upon companies which may be too small to economically perform the necessary cost studies to comply with part 36. *National Association of Regulatory Utility Commissioners v. FCC*, 737 F.2d 1095, 1128 (D.C.Cir.1984). Plaintiff's interpretation suggests that part 36 can be forced upon a state where an average schedule company undergoes the costs of performing a cost schedule and presents them to the state. Under this reasoning the purpose of the average schedule option would be defeated since the utility would have to incur the costs which the average schedule system seeks to avoid.

Finally, the plaintiff's proposed interpretation of part 36 seems inappropriate because the FCC has expressed disapproval of the manipulation performed by plaintiff in this case. *All Tel. Corp. v. FCC*, 838 F.2d 551, 560 (D.C.Cir.1988). In an effort to curb such manipulation the FCC attempted to restrict the use of the average schedule option. In rejecting the FCC's argument the D.C. Circuit relied upon residual rate making as the check which would prevent such an abuse.

> If the interstate portion of unseparated costs is found to be lower, the intrastate portion (which is the difference between unseparated costs and interstate costs) will be higher. State regulatory agencies must allow carriers to earn a fair return. Petitioners argue that lower interstate recovery will thus lead to higher intrastate revenues through higher local rates. The FCC's argument requires us to assume that lower interstate rates will not lead to higher intrastate revenues. Otherwise, a crucial part of the FCC's abuse argument disappears: There would be no profit to attract the manipulating company. Counsel met petitioner's contentions that lower interstate returns would be offset by higher intra-

state revenues, by withdrawing the FCC's claims that companies were profiting from their abuse ... Counsel's retreat undercuts the FCC's claim that in this case profit motive is fueling the engine of regulatory abuse.

*Id.* at 561, n. 5.

In the absence of state residual rate making the FCC's position that there is a profit motive encouraging the type of "regulatory abuse" engaged in by the plaintiff is supported. It seems unlikely that the FCC would support this result in its interpretation of part 36.

For the above reasons it appears unlikely that the interpretation of part 36 advocated by the plaintiff was intended by the FCC or is appropriate. Notwithstanding this apparent weakness on the merits of the case, however, the law in the Seventh Circuit concerning primary jurisdiction compels this Court to defer resolution of this case on its merits to the FCC. In *Zapp v. United Transp. Union,* 727 F.2d 617 (7th Cir.1984), the court supported deferral to the administrative agency under very similar circumstances. In that case the plaintiff was seeking an interpretation of an ambiguous ICC merger order. The Court found plaintiff's argument unpersuasive and was therefore reluctant to adopt the interpretation advanced by the plaintiff. Under the circumstances the Court found that the determination was properly committed to agency discretion and affirmed the district court's dismissal. 727 F.2d at 625.

In *Johnson v. Artim Transp. System, Inc.,* 826 F.2d 538 (7th Cir.1987) the Court went a step further and suggested that a failure to defer to agency discretion under the circumstances of this case would constitute plain error and justify reversal.

We can conceive of a case in which an appellate court might determine that a district court plainly erred in not applying the primary jurisdiction doctrine because it was necessary to the district court's decision that an agency make a determination regarding an issue or issues in the case. This might occur, for example, if a Federal Communications Commission (FCC) interpretation of an FCC regulation was crucial to the district court's decision. Even if the parties had not raised the issue before the district court, we might in that situation determine that the district court plainly erred in not deferring to the FCC for a determination.

It is undisputed in this matter that the FCC has final authority for promulgating the body of regulations which control the equitable separation of costs between state and federal services. The issue raised by this case is a question fundamental to that system of separations developed by the FCC. Under such circumstances the Court is required to permit the FCC to interpret part 36 prior to making a determination on the merits.

Accordingly, the Court will dismiss plaintiff's first cause of action without prejudice in order to afford plaintiff the opportunity to seek a favorable ruling before the FCC pursuant to 47 C.F.R. § 1.2.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendants DISMISSING plaintiff's complaint and all claims contained therein with prejudice except as to the first claim, which is subject to agency deferral referred to herein.