Neil **ELLIS**, Plaintiff,

v.

**TRIBUNE TV CO.**, Defendant.

**No. CIV.A.3:03 CV 833(CF).**

United States District Court, D. Connecticut.

March 21, 2005.

Federal Reserve Board Leasing Language, updated Mar. 29, 2000).

Stanley M. Falkenstein, Marte, Plepler, Falkenstein, Keith, Meggers & Paul PC, Jeffrey M. Carlson, Manchester, CT, for Plaintiff.

James T. Shearin, Pullman & Comley, Bridgeport, CT, Michael Alan Kurs, Pullman & Comley, Hartford, CT, for Defendant.

### RULING ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Neil Ellis, brought this action seeking injunctive relief pursuant to

47 U.S.C. § 401(b) against the defendant, Tribune Television Company ("Tribune"). The action challenges Tribune's compliance with an order issued by the Federal Communications Commission ("FCC") on August 3, 2001, concerning the cross-ownership rules promulgated by the FCC at 47 C.F.R. § 73.3555(d)(3). Now pending before the Court are Ellis' motion for summary judgment and Tribune's motion to dismiss. For the following reasons, the motion to dismiss [**Doc. # 20**] is **DENIED** and the motion for summary judgment [**Doc. # 12**] is **GRANTED**.

## I. *Background* [1]

On November 16, 1999, Tribune submitted an application to the FCC to transfer control of Tiberius Broadcasting, Inc., licensee of WTXX–TV, Channel 20(UPN), Waterbury, Connecticut, from Counterpoint Communications Inc. ("Counterpoint") to Tribune. At the time of that application, Tribune already was managing WTXX pursuant to a "Management Services Agreement" with Counterpoint, and also owned and operated WTIC–TV, Channel 61(FOX), in Hartford, Connecticut. WTXX and WTIC serve overlapping broadcasting communities in Connecticut. Because WTXX would be the second station owned by Tribune in the designated market area ("DMA"), its proposed acquisition of WTXX was governed by 47 C.F.R. § 73.3555(b)(2) ("the television duopoly rule").

In its subsequent review of Tribune's application for ownership of both stations, the FCC noted that:

[The television duoploy rule] provides, in pertinent part, that the same entity may own or control two television stations in the same market so long as: (i) at the time the application is field, at least one of the stations is not ranked among the top four stations in audience rankings in the DMA; and (ii) at least 8 independently owned and operating full-power commercial and noncommercial educational television stations would remain in the market after the proposed acquisition.

Although WTXX is not ranked among the top four stations in the DMA, there would not have been eight remaining independently owned and operated television stations in the Hartford DMA following the proposed merger. Therefore, in its application, Tribune requested a waiver from the television duopoly rule on the ground that WTXX was a "failing station," which is defined by the FCC as one that has been struggling for "an extended period of time both in terms of its audience share and financial performance." In its August 3, 2001 order on Tribune's request ("the 2001 Order"), the FCC agreed that WTXX was a failing station and granted Tribune a waiver from the television duopoly rule, thereby allowing Tribune to take control of WTXX.

While Tribune's application for acquisition of WTXX was pending, however, Tribune acquired ownership of the Hartford Courant, a daily newspaper of general circulation published in Hartford, as part of a larger transaction in which Tribune acquired the Times Mirror Company.[2] Because the Hartford Courant was within the "Grade A signal contours" of both WTIC

---

1. The following facts are taken from the allegations in the Complaint, as well as the parties' Local Rule 56(a) statements and the orders issued by the FCC. They are undisputed unless otherwise indicated.

2. As the FCC noted, Tribune's acquisition of the Hartford Courant "was only one aspect of a multi-market, multi-newspaper transaction that comprised Tribune's purchase of the Times Mirror."

and WTXX, Tribune's ownership of all three entities violated the television/newspaper cross-ownership rules promulgated by the FCC. Therefore, Tribune filed an amendment to its earlier filed request to acquire WTXX, which requested a two-year period following the acquisition of that station to achieve compliance with the cross-ownership rule by selling WTXX.[3]

The cross-ownership rule provides that "no license for [a] . . . TV broadcast station shall be granted to any party . . . if such party directly or indirectly owns, operates, or controls a daily newspaper and the grant of such license will result in' the Grade A signal contour of that television station encompassing the entire community in which such newspaper is published." 47 C.F.R. § 73.555(d)(3). In the 2001 Order, the FCC ultimately concluded that "granting Tribune a temporary period to come into compliance with the television/newspaper rule is appropriate." Therefore, after balancing the request for an extension against any potential harm to media diversity in the Hartford media market, the FCC "accord[ed] Tribune six (6) additional months in which to brings its

interests into compliance with the Commission's relevant ownership rules."[4] During this "short term temporary waiver," however, the FCC "expect[ed] Tribune to exercise its best efforts to sell the necessary assets to come into compliance with the rule." Although the order did not define "best efforts," the concurring statement of Commissioner Gloria Tristani stated: " 'Best efforts' is a meaningful and well-established standard in commercial law, and Tribune should not anticipate receiving additional time beyond this six-month period." This limited waiver was set to expire on February 6, 2002.

Due to its inability to comply with that order before February 6, 2002, Tribune "requested an additional six months to achieve compliance with the newspaper/broadcast cross-ownership rule by selling WTXX." Because the FCC concluded that Tribune had met the "high hurdle necessary to justify an additional six months in which to achieve compliance with . . . the cross-ownership rule," it granted Tribune's request.[5] In so doing, the FCC once again noted that it "expect[ed] Tribune to continue to exercise its

3. Tribune's ownership of WTIC and the Hartford Courant also violates the cross-ownership rule. However, as noted in the FCC's 2001 Order, Tribune has until April 1, 2007, the date at which WTIC's license will be subject to renewal, to resolve that conflict.

4. *It appears that the decision to grant Tribune a six-month waiver was not easily reached, as two Commissioners filed concurring statements indicating that, although they were agreeing with the extension, it was not without reservation. For example, Commissioner Gloria Tristani stated that she was "deeply troubled by the level of media concentration that would exist in Hartford as a result of this transaction," and that her "concurrence in this license transfer is also predicated on the Commission's express requirement that Tribune will use 'best efforts' to sell one or more of its properties to come into compliance with our rules in the next six months." In another*

concurring statement, Commissioner Michael Copps stated that he concurred with the result because "the public interest benefits to be derived from the transaction outweigh, albeit narrowly, the strong arguments against it." Commissioner Copps also indicated that, "by the barest of margins," the public interest is served by the granting of a six month extension.

5. Commissioner Copps once again issued a separate statement concurring in the result reached by the FCC, noting that, although he was "troubled" by the request for an extension, he nevertheless "reluctantly agree[d] to the grant of a six-month extension." He also noted, however, that he would "be following closely the company's efforts to sell [WTXX], and [he] expected to see the effort maximized as a response to the Commission's" grant of the additional six-month extension.

best efforts and to expand its current efforts if needed to sell the necessary assets to come into compliance with the rule by [August 19, 2002]".

On August 6, 2002, Tribune submitted a request for a permanent waiver of the requirements of the cross-ownership rules, as applied to Tribune and WTXX through the 2001 Order. On August 19, 2002, Tribune's second six-month extension expired. As of the date of this opinion, Tribune's request for waiver still has not been acted upon by the FCC, but no further extensions of time have been granted.

## II *Procedural History of This Case*

On May 9, 2003, Ellis filed a complaint in the District of Connecticut pursuant to 47 U.S.C. § 401(b), which provides:

> Orders of Commission. If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

The complaint alleges that Tribune has failed to comply with the 2001 Order, even after receiving two six-month extensions of time, and therefore it is in violation of that order. Moreover, Ellis contends that Tribune's failure to comply with the 2001 Order has negatively impacted the level of diversity and competition within the greater Hartford media market, thereby injuring the public. The prayer for relief requests that this Court: (1) find that Tribune is in violation of the 2001 Order; (2) enjoin Tribune from further violating the 2001 Order; (3) order Tribune to come into immediate compliance with the 2001 Order by divesting from the entities at issue; and (4) provide such other relief as the Court deems necessary and just, including attorney's fees. Now pending are Tribune's motion to dismiss and Ellis' motion for summary judgment. Because the motion to dismiss challenges this Court's subject matter jurisdiction, it will be addressed first.

## III *Tribune's Motion to Dismiss*

### 1) Standard

Although a Court considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) must "accept as true all material factual allegations in the complaint," *Shipping Financial Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998), "[t]he burden of proving jurisdiction is on the party asserting it." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994) (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986)). "[T]hat showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial,* 140 F.3d at 131; *see also Robinson,* 21 F.3d at 507 ("In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor"). Rather, "[i]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction... to proffer the necessary factual predicate-not just an allegation in a complaint-to support jurisdiction." *London v. Polishook,* 189 F.3d 196, 199 (2d Cir.1999) (citations omitted). When re-

solving issues surrounding its subject matter jurisdiction, a court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citing *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986))

Tribune claims that this Court lacks subject matter jurisdiction because: (1) the relief sought by Ellis has been rendered moot by the FCC's repeal of 47 C.F.R. § 73.3555(d)(3) (the cross-ownership rule); (2) this case is not ripe because the FCC has not yet acted on Tribune's request for waiver; and (3) the doctrine of primary jurisdiction requires this Court to dismiss Ellis's complaint. Each claim, and Ellis's response thereto, will be addressed in turn.

#### 2) Mootness

 The mootness doctrine is derived from Article III of the Constitution, which provides that federal courts may decide only live cases or controversies. *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir.1998). "This case-or controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir.1998). "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian and Gay Org.*, 143 F.3d at 647. Moreover, "[i]n order to establish that there is a likelihood of success on the merits, as required for an injunction [to lie] ... the movant must establish that the case is not likely to be moot." *Granite State Outdoor Advertising, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir.2002) (internal citation omitted).

 After Tribune's request for waiver was filed in 2002, the FCC repealed the cross-ownership rule set forth at 47 C.F.R. § 73.3555(d)(3), concluding that the rule could no longer be justified for larger markets in light of the abundance of sources of information that individuals rely on for news. The FCC replaced the old cross-ownership rule with a new set of "Cross Media Limits" ("the New Rules") which permit, inter alia, common ownership of broadcast stations and newspapers in most markets.[6] The FCC has stated that the New Rules "provide a new, comprehensive national and local regulatory framework that will serve the public interest by promoting competition, diversity and localism." In issuing the New Rules, the FCC noted that "[p]etitions and informal objections that were submitted to the [FCC] prior to the adoption date of the [New Rule] and that contest pending applications solely on grounds of competition pursuant to the interim policy will be dismissed as moot." Because the 2001 Order was issued before the New Rules were adopted, Tribune contends that Ellis' action seeking to enforce the 2001 Order is moot.

On June 24, 2004, however, after Tribune had filed its motion to dismiss in the instant case, the U.S. Court of Appeals for the Third Circuit held that "the [FCC's]

---

**6.** Section 202(b) of the Telecommunications Act of 1996 ("the 1996 Act") instructed the FCC to review biennially its broadcast ownership rules "to determine whether any of such rules are necessary in the public interest as the result of competition" and to "repeal or modify any regulation it determines to be no longer in the public interest." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 384 (3rd Cir.2004) (reviewing the provisions of the 1996 Act). Thus, the New Rules were established pursuant to these provisions of the 1996 Act.

decision to replace its cross-ownership rules with the [New Rules] is not of itself constitutionally flawed and does not violate § 202(h). But we cannot uphold the [New Rules] themselves because the Commission does not provide a reasoned analysis to support the limits that it chose." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 384 (3rd Cir.2004). In particular, the Third Circuit found that the FCC's method for measuring media diversity in a region was flawed because it "gave too much weight to the Internet as a media outlet, irrationally assigned outlets of the same media type equal market shares, and inconsistently derived the Cross–Media Limits from its Diversity Index results." *Id.* As a result, the Third Circuit stayed the FCC from implementing the New Rules, and remanded the action so that the FCC could justify or modify its approach to setting numerical limits. *Id.* at 435.[7]

On July 22, 2004, Tribune filed a motion with the Third Circuit requesting that the stay be lifted on the New Rules, as they pertain to cross-ownership in that segment of the media market which included the Hartford area. Indeed, Tribune's motion specifically mentioned the situation it was facing in Hartford: "Tribune's ownership of both the Courant and WTXX is pursuant to [a] temporary waiver of the 1975 newspaper rule ... Under this rule (and the Court's stay), Tribune is obligated to sell either the Courant or the television stations within the next two years, and the FCC continues to require Tribune to file reports every 45 days on its efforts to sell WTXX." In addition, Tribune's motion argued that the Third Circuit's "continuation

of the stay will cause Tribune irreparable harm." The motion to lift the stay was denied.

In light of the stay issued by the Third Circuit, the previous cross-ownership rules remain effective, and this Court cannot conclude that Ellis' action seeking Tribune's compliance with an order issued pursuant to those rules is moot. Moreover, the FCC and the White House recently announced that they would not appeal the Third Circuit's decision.[8] Although several of the media companies affected by the Third Circuit's decision, including Tribune, have since filed their own petitions for a writ of certiorari to the United States Supreme Court,[9] the Court must conclude that Ellis's claims are not moot. Finally, the Court notes that the arguments set forth by Tribune in support of its motion to lift the stay in *Prometheus Radio Project* reveal that it did not consider preexisting orders, such as the 2001 Order in the instant case, to be moot. Because the Third Circuit has denied Tribune's motion to lift the stay, there is no doubt that preexisting orders remain effective pursuant to the prior cross-ownership rules.

### 3) Ripeness

Ripeness is properly considered on a Rule 12(b)(1) motion. *Student Members of Same v. Rumsfeld*, 321 F.Supp.2d 388, 392 (D.Conn.2004). Constitutional ripeness is "a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless

---

7. The opinion of the Third Circuit in *Prometheus* was issued on June 24, 2004. This Court ordered the parties to brief the impact of that opinion on the instant case on June 29, 2004. Both parties subsequently filed briefs with the Court, and they have been considered in the resolution of the pending motions.

8. *See, e.g.*, Frank Ahrens, "FCC Drops Bid to Relax Media Rules," Wash. Post, Jan. 28, 1995, pg. A1.

9. *See, e.g.*, "Media Companies appeal ownership curbs," Chicago Tribune, Feb. 1, 2005.

the resolution of an actual dispute requires it." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir.2003). "[T]he ripeness inquiry requires courts to consider both the fitness of the issues for judicial decision and the hardship resulting from withholding judicial consideration." *Marchi v. Bd. of Coop. Educ. Services*, 173 F.3d 469, 478–79 (2d Cir.1999) (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The Second Circuit has considered a variety of factors in evaluating whether a case is ripe for adjudication in the context of a challenge to administrative rulings, including: (1) whether the issue to be reviewed is more legal or factual in nature; (2) whether the agency action is likely to have an immediate and substantial impact upon the complaining party; (3) whether judicial review would delay or impede effective enforcement or the relevant administrative scheme; (4) whether the agency's actions are final, and (5) whether an adequate factual record has been established. *See Able v. United States*, 88 F.3d 1280, 1289–90 (2d Cir. 1996); *Burt v. Rumsfeld*, 322 F.Supp.2d 189, 201 (D.Conn.2004).

■ As noted previously in this ruling, Tribune filed a request for waiver from the conditions of the 2001 Order with the FCC in August, 2002. Despite the passage of over two years, the FCC has not acted upon Tribune's request. Nevertheless, Tribune claims in its motion to dismiss that this action is not ripe for review because the "the FCC must be permitted an opportunity to complete its review of Tribune's Request for Waiver before [Ellis] can pursue a claim like this."[10] After considering the factors listed above, however, the Court finds that this matter is ripe for adjudication. The question presented by this action is strictly legal in nature as there are no genuine issues of material fact-namely, whether Tribune has complied with a FCC order. Action from the FCC on the request for waiver likely would have an immediate and substantial impact upon Ellis, the complaining party, only if the FCC reversed it prior decision and granted Tribune a waiver from the 2001 Order. If the FCC declined to grant Tribune a waiver, there would be no substantial impact on Ellis, as the status of the parties would remain unchanged. In addition, the Court finds that judicial review would not delay or impede effective enforcement or the relevant administrative scheme, as the FCC already has issued a final order in this matter. Finally, the Court finds that, through Tribune's original application and additional applications for extensions of time, as well as the comprehensive orders issued by the FCC in response to those applications, an adequate administrative record has been established.

The Court also notes that, as Ellis correctly contends, the 2001 Order was a final order from the FCC, and the pending request from Tribune seeks relief from that order. The very nature of the waiver request indicates that Tribune views itself as being in violation of that order, and in need of relief from its terms. Tribune has cited no decisions supporting its suggestion that the filing of a request for waiver, by itself, tolls the conditions set forth in a final agency order. *Cf. U.S. v. Peninsula Communications, Inc.*, 287 F.3d 832, 837 (9th Cir.2002) ("FCC orders are effective on the date of their release unless noted

---

10. Despite arguing that this Court should grant the FCC additional time to act upon Tribune's request for a permanent waiver, the final page of Tribune's memorandum in opposition states the exact opposite: that Ellis's motion should be denied on the basis of waiver, estoppel and laches. These arguments, in addition to being devoid of any substantive analysis, are without merit.

otherwise ... Filing an appeal under Section 402 does not excuse a broadcaster from complying with the FCC order absent a decision by the D.C. Circuit to stay the order"). Moreover, Tribune's request for a waiver was filed under the FCC's old cross-ownership rule, and prior to the promulgation of the New Rule. Therefore, because the old rule still is in effect pursuant to the stay issued by the Third Circuit and the FCC's decision not to appeal to the Supreme Court from that stay, the Court finds that this matter is ripe for adjudication.

### 4) Primary Jurisdiction

It is undisputed that this Court has original jurisdiction over Ellis' claims, as they arise under the United States Constitution and the laws of the United States. 28 U.S.C. § 1331. In its motion to dismiss, however, Tribune argues that this Court should invoke the doctrine of "primary jurisdiction," dismiss the case, and allow this dispute to be resolved by the FCC.

■ "Primary jurisdiction is not a doctrine that implicates the subject matter of the federal courts. Rather, it is a prudential doctrine under which court may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Technology, Inc.,* 307 F.3d 775, 780 (9th Cir.2002). As the Second Circuit has noted:

An examination of the cases illustrates the relatively narrow scope of the doctrine of primary jurisdiction. The doctrine has been applied only when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, particularly when the issue involves technical questions of fact uniquely

within the expertise and experience of an agency.

*Goya Foods, Inc. v. Tropicana Products, Inc.,* 846 F.2d 848, 851 (2d Cir.1988). Moreover, the Second Circuit has "emphasize[d] that primary jurisdiction is a discretionary doctrine"; *Tassy v. Brunswick Hosp. Center, Inc.,* 296 F.3d 65, 72 (2d Cir.2002); under which courts defer to agencies in matters over which they share concurrent jurisdiction in the interest of promoting "[u]niformity and consistency in the regulation of business entrusted to particular agency ...." *United States v. Western Pac. RR. Co.,* 352 U.S. 59, 65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *see also Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51, 59 (2d Cir.1994) (as a threshold matter a court must find that the agency has jurisdiction over the issue presented). In general, "courts have resisted creating any fixed rules or formulas for its application.... [and therefore in] 'every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.'" *Tassy,* 296 F.3d at 68 (quoting *Fed. Mar. Bd. v. Isbrandtsen Co.,* 356 U.S. 481, 498, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958)). "The aim of the doctrine, then, is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,* 84 F.3d 91, 97 (2d Cir.1996).

■ The foregoing principles essentially can be distilled into four elements: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a sub-

stantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Niehaus v. AT & T Corp.*, 218 F.Supp.2d 531, 537 (S.D.N.Y. 2002) (citing *National Communs. Assoc., Inc. v. AT & T Co.*, 46 F.3d 220, 222–23 (2d Cir.1995)).

■ Although the FCC has jurisdiction over the issue presented in this action, the Court finds that dismissal of Ellis' action under the doctrine of primary jurisdiction is not warranted. Tribune never has claimed that its ownership of WTXX, in conjunction with its ownership of WTIC and the Hartford Courant, complied with the FCC's cross-ownership rule. Indeed, its first application to the FCC requested a two year period from the date of its acquisition of WTXX to come into compliance with that rule. The FCC rejected that request, and only granted Tribune a six month period to achieve compliance. Although that period was extended for another six months upon Tribune's request, the FCC has never indicated that there was any ambiguity to its order, that further fact-finding is necessary or that there are any technical questions remaining in regards to Tribune's ownership of the various media outlets in Connecticut. To the contrary, the FCC consistently has indicated that Tribune is in violation of its cross-ownership rules. Thus, the question presented in this case is straightforward: whether Tribune is in compliance with the 2001 Order. *Hawaiian Telephone Co. v. Public Utilities Comm'n of Hawaii*, 827 F.2d 1264, 1272 (9th Cir.1987) (FCC order properly enforced by the district court); *compare Niehaus*, 218 F.Supp.2d at 537 (deferring to FCC because the action involved "highly technical questions" concerning the re-routing of calls and the splitting of fees); *Mid–Plains Telephone Co. v. Public Service Comm'n of Wisconsin*, 745 F.Supp. 1450, 1453–54 (W.D.Wis.

1989) (deferring to FCC under doctrine of primary jurisdiction because relevant regulation was "ambiguous with respect to its scope"). Because this action is focused on the particular situation faced by Tribune in Connecticut, there is no substantial danger of inconsistent rulings. The FCC has issued a order limited to Tribune's situation, and its enforcement in this Court also would be so limited. Finally, Tribune clearly has made prior applications to the FCC. Therefore, the Court finds that consideration of all four of the factors identified previously counsels against dismissing this case under the doctrine of primary jurisdiction.

In addition, Ellis brought this motion pursuant to 47 U.S.C. § 401(b), which provides in relevant part that: "If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect . . . any party injured . . . may apply to the appropriate district court of the United States for the enforcement of such order." This statutory grant of enforcement power would be eviscerated if district courts always had to defer to the jurisdiction of administrative agencies, as apparently suggested by Tribune. Situations such as found in the present case, where there is a lack of factual or technical questions which might otherwise be uniquely suited for review by an administrative agency, present an appropriate situation for a district court to retain jurisdiction over a § 401(b) action. Moreover, the Court notes that, although this case has been pending since 2003, at no time did the FCC make a motion to intervene or otherwise participate in this litigation, despite its ability to do so. *Hawaiian Telephone*, 827 F.2d at 1272 ("the FCC can intervene or file amicus briefs in § 401(b) actions or even invoke the doctrine of primary jurisdiction"); *South Central Bell Telephone v. Louisiana*, 744 F.2d 1107, 1118 (5th Cir.1984)

(same), vacated on other grounds by, *Louisiana Public Service Commission v. South Central Bell Telephone Company*, 476 U.S. 1166, 106 S.Ct. 2884, 90 L.Ed.2d 972 (1986) ("through the use of agency intervention and amicus curiae briefs, as well as through the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent both inconsistent applications of FCC rules and serious judicial encroachment upon FCC responsibilities"). Consequently, the Court declines to dismiss the case under the doctrine of primary jurisdiction.[11]

For the foregoing reasons, Tribune's Motion to Dismiss **[Doc. # 20]** is **DENIED**.

## IV *Ellis' Motion for Summary Judgment*

### 1) Standard

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–1061 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When addressing a motion for summary judgment, a court must resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). Therefore, summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

11. In a supplemental memorandum in support of its motion to dismiss, Tribune submitted a copy of a September 5, 2003 letter from W. Kenneth Ferree, Chief of the Media Bureau at the FCC, which Tribune claims "completely refutes the essential predicate of Ellis' complaint: the erroneous charge that since August, 2002, Tribune has been in violation of the FCC's waiver order and rules." More specifically, Tribune claims that the letter makes "clear in no uncertain terms that Tribune's case remains pending," and therefore this action should be dismissed under the doctrine of primary jurisdiction. Because this letter was issued prior to the issuance of the Third Circuit's opinion in *Prometheus Radio Project*, however, this Court finds that it does not counsel in favor of dismissal. In other words, that letter was written after the New Rules had been promulgated, but before they had been found to be legally deficient by the Third Circuit. Moreover, the FCC has indicated that it will not appeal the Third Circuit's decision or the stay it issued. Because the old cross-ownership rules remain in effect, and the FCC consistently has found that Tribune's ownership of WTXX, WTIC and the Hartford Courant violates those rules, this Court finds that Ferree's letter does not counsel in favor of dismissal pursuant to the doctrine of primary jurisdiction. In addition, Tribune has not provided the Court with any correspondence it has had with the FCC since the stay imposed by the Third Circuit became finalized on June 24, 2004.

**2) Analysis**

As mentioned previously, Ellis brings this action under 47 U.S.C. § 401(b), which provides, in relevant part, that:

> If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

Ellis claims that he is entitled to summary judgment in this "narrowly focused, uncomplicated enforcement matter" because Tribune has failed to comply with the 2001 Order, and § 401(b) provides an appropriate enforcement mechanism for injured parties. Tribune contends, however, that summary judgment is not appropriate because Ellis has not established that: (1) he is an injured party; and (2) Tribune has violated an order of the FCC.[12] Essential- ly, both parties' arguments center around the same four elements: "(1) [there] is an FCC 'order' within the meaning of the Act, (2) the order was regularly made and duly served upon the defendant, (3) the defendant is in disobedience of the order, and (4) the party seeking the injunction has been injured by the defendant's disobedience. . . ." *American Telephone and Telegraph Co. v. MCI Telecommunications Corp.*, 1993 WL 268394 (D.D.C. July 7, 1993) (citations omitted).[13] Each element will be addressed in turn.

**i) FCC Order**

 As a general matter, courts have recognized that "Congress, rather than attempting to limit § 401(b) exclusively to adjudicatory orders, intended that a broad range of orders be reviewable under § 401(b)." *Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n*, 913 F.2d 305, 308 (6th Cir.1990); *see South Central Telephone Co.*, 744 F.2d at 1118 (adopting a "broad construction" of 401(b) due to the "vital policies furthered by private enforcement of FCC rulemaking orders"). Viewed with this broad construction, it is clear that the 2001 Order constitutes a valid order for purposes of § 401(b). To begin with, the 2001 Order is entitled "Memorandum Opinion and Order," and it notes that "Tribune's acquisition of the Hartford Courant during the pendency of its earlier-filed request to acquire control of WTXX *triggers immediate application*

---

**12.** Tribune also claims in its memorandum in opposition to Ellis' summary judgment motion that it is entitled to summary judgment on the grounds that: (1) Ellis' action is moot; (2) Ellis' action is not ripe; and (3) this Court should defer to the FCC under the doctrine of primary jurisdiction. Because those issues have been sufficiently addressed within the context of considering Tribune's motion to dismiss, the Court need not address them further.

**13.** A hearing was held by this Court, at which both parties appeared, thereby satisfying § 401(b)'s apparent additional requirement that a hearing be held prior the issuance of any relief to the plaintiff. *But see U.S. v. Peninsula Communications, Inc.*, 287 F.3d at 837 (section 401(b) "does not make an oral hearing mandatory. Instead, we find the statute simply creates a procedure consistent with a court's usual juridical duties, requiring the court to receive evidence as it does in the normal course").

of the television/newspaper cross-ownership rule to its proposed purchase. Tribune therefore requests a two-year period ... to achieve compliance with [that rule]" (emphasis added). As that sentence demonstrates, there appeared to be no dispute that Tribune's acquisition of WTXX violated the cross-ownership rule, and that the FCC was requiring Tribune to come into compliance with that rule. *See Mallenbaum v. Adelphia Commun. Corp.*, 74 F.3d 465, 467 (3d Cir.1996) (holding that "an agency regulation is not a privately enforceable 401(b) order unless it requires the defendant to take a particular action"). The 2001 Order further states in paragraph thirteen that: "IT IS FURTHER ORDERED, That, from the date this transaction is consummated, Tribune IS GRANTED a *temporary* six-month period within which *to come into compliance with* the television/newspaper cross-ownership rule ...."(emphasis added). Indeed, all of Tribune's actions since the date of that order, which include its request for an additional six month extension, the request for a permanent waiver, and the motion to lift the stay imposed by the Third Circuit in *Prometheus Radio Project*, are premised on the notion that the 2001 Order was a final order with which it must comply. *Compare New England Telephone & Telegraph Co. v. Public Utilities Commission of Maine*, 742 F.2d 1, 4–7 (1st Cir.1984) (concluding that an FCC directive that it considered to be the product of a rulemaking proceeding, and that was not specifically directed at the parties against whom enforcement was sought, was not enforceable under § 401(b)).

ii) "Regularly Made and Duly Served"

■ It cannot be disputed that the 2001 Order was "regularly made and duly served" within the meaning of § 401(b). Tribune filed the application that resulted in the issuance of the order, Tribune participated in the proceedings leading up to that order, and Tribune undertook various follow-up measures to relieve itself from the burdens imposed by that order. *See Hawaiian Telephone Co.*, 827 F.2d at 1272 ("[w]e think that 'regularly made' in § 401(b) simply refers to procedural regularity"); *South Central Telephone Co.*, 744 F.2d at 1118 ("the requirement of 'due service' is met if the defendant in a § 401(b) proceeding received notice legally sufficient to make the order enforceable").

iii) Disobedience of the Order

■ It is clear that under the cross-ownership rule promulgated by the FCC, "no license for [a] ... TV broadcast station shall be granted to any party ... if such party directly or indirectly owns, operates, or controls a daily newspaper and the grant of such license will result in the Grade A signal contour of that television station encompassing the entire community in which such newspaper is published." 47 C.F.R. § 73.555(d)(3). As noted previously, according to the FCC, Tribune's acquisition of the Hartford Courant during the pendency of its application to acquire WTXX_ trigger[ed] immediate application of the television/newspaper cross-ownership rule to its proposed purchase. Indeed, Tribune's numerous applications for extensions of time in which to come into compliance with that rule implicitly recognize that it was failing to comply with that rule. Neither of the two six-month extensions it received brought it into compliance with the rule. To the contrary, the orders issued on those extension requests explicitly note that they are "temporary waivers" and that Tribune was expected to come into compliance with the 2001 Order, and thus the cross-ownership rule.

Tribune attempts to avoid this by arguing that the FCC orders "concerning the disposition of the Tribune assets have been

temporary at best and have not called for outright 'divestiture' [of] WTXX as claimed by plaintiff." Tribune asserts that Ellis "would have this Court order divestiture based on a FCC order requiring only Tribune's *best efforts* to comply with the rule ... [emphasis in brief]" This argument fails, however, because the clear language of the 2001 Order, as well as the subsequent ruling on Tribune's request for an extension, tie Tribune's compliance with the divestiture of WTXX. Indeed, Commissioner Copps noted in his statement concurring in the order that "today's decision requires the company to divest the necessary properties to come into compliance with the [cross-ownership] rule within six months.... I would expect the company's divestiture efforts to begin immediately." Although the orders did require Tribune to use its "best efforts" in reaching such compliance, nothing in the language of either order suggests that by merely using their "best efforts" in an unlimited time period, Tribune would be in compliance. To the contrary, both orders stressed that this was a unique situation caused by Tribune's subsequent acquisition of the Hartford Courant, that the extensions of time were "temporary" and that divestiture of WTXX was the objective.[14] The extensions of time, therefore, are nothing more than a recognition that an owner cannot divest of a television station immediately, and therefore that Tribune must be accorded "a reasonable time to bring its Hartford media assets *into compliance* with our rules." (FCC 2001 Order, emphasis added). Thus, while a "best efforts" defense may have been available to Tribune during the

extension period, there is no doubt that the extension period has ended and Tribune has not been granted any additional time for compliance. Consequently, the Court finds that Tribune is in disobedience of the 2001 Order.

iv) "Injured Person"

 Finally, this Court must determine if Ellis is an injured party. Section 401(b) merely provides that, if "a person [15] fails or neglects to obey any order of the Commission ... any party injured" may bring an enforcement action. None of the relevant statutes further defines "any party injured." *See, e.g.,* 47 U.S.C. § 153 (setting forth relevant definitions). Although a § 401(b) plaintiff is limited to injunctive, rather than monetary, relief; *Conboy v. AT & T,* 241 F.3d 242, 252 (2d Cir.2001); such a plaintiff "need not ... prove irreparable injury as required in a traditional suit for injunctive relief." *Southwestern Bell Telephone Co. v. Public Utility Com'n of Texas,* 812 F.Supp. 706, 708 (W.D.Tex.1993) (citing cases).

Ellis claims in both his Local Rule 56(a)(1) statement and his supporting memorandum that he, as a Hartford area resident, "as well as the public at large, has been injured by the lack of diversity and competition within the Hartford and surrounding areas' media market which is the direct result of [Tribune's] disobedience of the [2001] order." Tribune contends that such a conclusory, nonspecific proof of harm cannot support a grant of

14. In the 2001 Order, the FCC noted that Tribune's request for a two-year extension was premised on Tribune's assertion that "it had tried diligently, but ultimately unsuccessfully, to find a buyer for WTXX alone or for WTIC and WTXX together." Thus, Tribune clearly understands that divestiture is required by the FCC.

15. It appears to be undisputed that Tribune is a "person" subject to suit under § 401(b). *See* 47 U.S.C. § 153(32)("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation").

summary judgment.[16] Essentially, Tribune asserts that Ellis should have produced "detailed market studies or other factual evidence allegedly showing injury to media competition and diversity in Hartford." For several reasons, this argument is unpersuasive.

First, as noted previously in this ruling, courts have adopted a broad construction of § 401(b) due to the "vital policies furthered by private enforcement of FCC rulemaking orders." *South Central Telephone Co.*, 744 F.2d at 1118; *accord Alltel Tennessee, Inc.*, 913 F.2d at 308. In accordance with the broad remedial provisions of § 401(b), at least one court has rejected a defendant's argument that a § 401(b) plaintiff must have suffered a "substantial" injury. *Southwestern Bell Telephone Co.*, 812 F.Supp. at 711. Indeed, another district court, while addressing an action brought by the government under § 401(a), noted that "where, as here, the statute was enacted to protect the public interest and itself authorizes injunctive relief, '[t]he passage of the statute is in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.'" *U.S. v. Medina*, 718 F.Supp. 928, 930 (S.D.Fla.1989) (quoting *United States v. Diapulse Corp.*, 457 F.2d 25, 27 (2d Cir.1972)). Therefore, the Court finds that the remedial purpose behind § 401(b) militates against requiring the detailed evidence sought by Tribune in this case.

Second, the FCC already has found that Tribune's ownership of WTXX, WTIC and the Hartford Courant would negatively affect diversity and competition within the Hartford media market-the exact injury alleged by Ellis. In its application, Tribune requested a two-year period in which to come into compliance with the crossownership rule. Although the FCC noted that it had granted a similar request in New York City, it nevertheless rejected Tribune's request. In so doing, the FCC stated that it granted the prior request "in part because the market involved, New York City, was a highly diverse media market. Hartford, however ... is a substantially less diverse market than New York." In granting Tribune a significantly reduced period of six months in which to come into compliance, the FCC concluded that:

> [T]he temporary loss of diversity in the Hartford market during this period due to Tribune's common ownership of WTIC and WTXX and the Hartford Courant will be outweighed by the benefits of permitting an orderly sale of media properties to a qualified duty that will preserve these stations as media voices in the market [emphasis added].

Thus, the FCC conclusively found that allowing common ownership of those three media outlets would damage diversity of the media outlets in the Hartford market.

Finally, although most of the reported cases seeking enforcement of orders under § 401(b) involve government agencies or business entities as plaintiffs, it would seem that, in the context of this action, a member of the public in the broadcast area is particularly qualified to request compliance with the FCC orders. The FCC

---

**16.** Tribune's memorandum in opposition also states that "[Ellis] does not claim any monetary harm or monetary loss in his complaint or motion." Nothing in the language of § 401(b) suggests that a plaintiff must present such a loss. Indeed, in a case such as this one, where the FCC's order concerns diversity of ideas and programming in a media market, an individual plaintiff would never likely suffer such a loss. Thus, while measuring a 401(b) plaintiff's "injury" in monetary terms may be appropriate in some cases, it is inappropriate in the instant case. *See e.g., South Cent. Bell*, 744 F.2d at 1113 (plaintiff alleged economic loss because its rate of return reduced from 13.5% to 12%).

emphasized in its orders that it is the members of the public in the Hartford broadcast area that suffer most from the lack of media diversity occasioned by non-compliance.

Consequently, the Court finds that there is no genuine issue of material fact and Ellis is entitled to judgment as a matter of law.

## V Conclusion

IT IS ORDERED that Tribune's Motion to Dismiss [**Doc. # 20**] is **DENIED**.

IT IS ORDERED that Ellis' Motion for Summary Judgment [**Doc. # 12**] is **GRANTED**.

IT IS FURTHER ORDERED and DE-CLARED that Tribune is in violation of the FCC's order dated August 2, 2001, and its subsequent order dated February 19, 2002, which required Tribune to sell WTXX, by itself or in a package with WTIC, in order to comply with the FCC's cross-ownership rule, 47 C.F.R. § 73.555(d)(3).

IT IS FURTHER ORDERED and DE-CLARED that Tribune has been in violation of the FCC's cross-ownership rule, 47 C.F.R. § 73.555(d)(3), since August 19, 2002.

THEREFORE, IT IS FURTHER OR-DERED that Tribune forthwith come into compliance with the FCC's cross-owner-ship rule, 47 C.F.R. § 73.555(d)(3), as required by the FCC's order dated August 2, 2001, and its subsequent order dated February 19, 2002.